PHELPS-DICKSON BUILDERS, L.L.C., Plaintiff v. AMERIMANN PARTNERS, AMERIMANN PARTNERS IV, L.L.C., AMERIMANN HOMES, L.L.C., STERLING PROPERTIES, L.L.C. f/k/a MALPASO REALTY, L.L.C., and RON MIKESH, Defendants

No. COA04-520

(Filed 16 August 2005)

**1. Discovery— motion to compel denied—review of documents permitted**

.The trial court did not err by denying a motion to compel discovery where the court reviewed the materials, but allowed a 24-hour review of the documents. Although plaintiff argues that this limitation on discovery was tantamount to the imposition of sanctions, nothing indicated such an intent.

**2. Discovery— motion to compel denied—existence of key issues**

The existence of key issues alone does not necessarily entitle plaintiff to further discovery responses, and plaintiff's assertions about the information were merely conclusory. The affirmative defenses about which plaintiff sought information were irrelevant because defendant's pleadings were never amended to assert these defenses.

### 3. Discovery— motion to compel denied—review of documents permitted

The trial court did not abuse its discretion when denying a motion to compel discovery by allowing the inspection of the documents for a twenty-four hour period two days before the hearing on defendant's summary judgment motion. Plaintiff did not present an argument as to why the time allowed for inspection was insufficient, and plaintiff cannot be heard to complain that it was granted one of the means of discovery expressly denominated under Rule 26.

### 4. Civil Procedure— summary judgment—timeliness—amended answer

There was no merit to a contention of error in the granting of summary judgment before the time for responding to an amended answer where the amended answer was not filed.

### 5. Agency— existence—developer and sales agent

There was an agency relationship between a sales agent who spoke with a builder and the developer where the agent exercised sweeping powers with the developer's knowledge and consent.

### 6. Contracts— merger clause—valid

An attempt by plaintiff (a builder) to enlarge or vary the duties of defendant (a developer) based upon oral representations was barred by a merger clause in the written contract between the parties.

### 7. Fraud— allegations—knowledge and intent—inferred from facts

While knowledge and intent must be alleged in a complaint for fraud, it is sufficient if fraudulent intent may reasonably be inferred, presumed, or necessarily results from the facts alleged.

### 8. Fraud— representations—opinions or statements of fact—summary judgment

Summary judgment for defendant-developer could not be upheld on a fraud claim by a builder against the developer where there was a jury question as to whether representations by the developer's agent were intended and received as expressions of opinion or statements of material fact.

**9. Fraud— representations—opportunity to investigate— summary judgment**

A fraud claim should not have been barred by summary judgment on the ground that plaintiff had some lesser opportunity to investigate representations by defendant's agent, who had superior knowledge.

**10. Unfair Trade Practices— representations by developer to builder—summary judgment**

An unfair and deceptive trade practice claim by a builder against a developer was sufficient to survive summary judgment.

**11. Compromise and Settlement— existence of global settlement—summary judgment**

There was a genuine issue of material fact concerning whether there had been a global settlement of claims between a builder and a developer, and summary judgment should not have been granted for defendants on that basis.

**12. Civil Procedure— summary judgment with sanctions—no findings**

The trial court did not err by not making findings in a summary judgment order which included sanctions. This is not the rare case which warrants findings concerning undisputed facts or conclusions.

Appeal by plaintiff from orders entered 24 and 26 November 2003 by Judge Narley J. Cashwell in Wake County Superior Court. Heard in the Court of Appeals 16 February 2005.

*Hopper Law Firm, by Kevin P. Hopper, for plaintiff-appellant.*

*Patterson, Dilthey, Clay, Bryson & Anderson, L.L.P., by Ronald C. Dilthey and Kathrine E. Downing, for defendant-appellees Amerimann Partners, Ameriman Partners IV, L.L.C., and Amerimann Homes, L.L.C.*

*Brown, Crump, Vanore, & Tierney, L.L.P., by W. John Cathcart and Michael W. Washburn, for defendant-appellees Sterling Properties, L.L.C. f/k/a Malpaso Realty, L.L.C. and Ron Mikesh.*

CALABRIA, Judge.

Phelps-Dickson Builders ("plaintiff") is a North Carolina residential construction company. In an effort to gain exposure in north

Raleigh, plaintiff talked to several developers in that area to discuss becoming part of their building team, including Amerimann Partners, the developer of the La Ventana subdivision, and was able to start construction on a house in that subdivision. Amerimann Partners was also developing two subdivisions named Savannah and Savannah Village at Wakefield Plantation (collectively "Savannah"), a theme community with eight pre-selected house plans for high-end, custom, Charleston-style homes.

Ron Mikesh ("Mikesh") of Sterling Properties,[1] the sales agent in La Ventana representing Amerimann Partners, also assisted Amerimann Partners in the development of Savannah. After plaintiff's involvement in La Ventana, Mikesh approached plaintiff with the prospect of becoming a builder in Savannah in early June 1999. During ensuing meetings between Mikesh and Brad Phelps, an ownership partner of plaintiff, plaintiff alleges Mikesh represented, *inter alia*, (1) Greenbriar, a current exclusive builder in Savannah at that time, "could not build its presale homes fast enough"; (2) "presale customers were lined up and waiting to meet" with exclusive builders in Savannah; (3) there were currently seven presales and additional "strong, solid contacts" in Savannah; (4) plaintiff would be one of two exclusive builders permitted to build in Savannah and there would be no competitive bidding; and (5) "the 63 lots in [Savannah] would be divided between the exclusive builders." Mikesh also noted there would be extensive landscaping, mass advertising, and publication articles in magazines. In order to become an exclusive builder with Greenbriar in Savannah, plaintiff was required to purchase four lots, two of which were available for presale opportunities and two of which plaintiff was required to build a model house according to specifications provided by Amerimann. Many of these understandings on the part of plaintiff were set out in a faxed letter to Mikesh, which included the main points of their discussion at a 15 June 1999 meeting, and was sent approximately two days after the meeting.

On 8 October 1999, plaintiff and Amerimann entered into four contracts for the sale of four lots located in Savannah. None of the contracts included Mikesh's oral representations to plaintiff. However, the contract did contain a merger clause, which provided as follows: "This instrument (together with any Exhibits attached)

---

1. For purposes of this appeal, both Malpaso Realty and Sterling Properties will be referred to as Sterling Properties, the current name for the realty business involved in this appeal.

constitutes the entire agreement between parties, and supersedes any and all prior agreements and understandings, whether oral or written, between the parties."

Plaintiff started construction of the two model homes, and shortly thereafter, problems arose between the parties. In October 1999, Amerimann brought a third builder into Savannah, who began construction of a house on one of the lots that had been allocated to plaintiff. Plaintiff said in his deposition that the construction activities of this third builder had the dual effect of decreasing plaintiff's potential presales and saturating the market. Despite Mikesh's representations concerning consumer interest in Savannah, presale opportunities were nonexistent, and plaintiff did not meet with any potential clients. Other disputes arose as well. For example, when Greenbriar started experiencing financial difficulties and was unable to build one of its presales, Amerimann created Amerimann Homes, L.L.C. to build the home for the client and, ultimately, brought in another builder to finish the house. In addition, only three presale contracts existed at the time Mikesh represented there were seven. Moreover, when Mikesh did approach plaintiff concerning a possible presale client for a lot assigned to plaintiff and the houseplan associated with that lot, the presale client ultimately declined plaintiff's bid when Amerimann and Mikesh allowed the desired houseplan to be "reallocated" to another lot for another builder with a lower bid to construct.

Tensions escalated between the parties, and on 12 July 2000, plaintiff met with Amerimann to discuss the issues that had arisen. When the parties could not reach a resolution, plaintiff sought legal assistance and demanded that Amerimann repurchase the two undeveloped lots and purchase the homes plaintiff built on the other two lots. Amerimann responded with an offer to purchase only the two undeveloped lots. Plaintiff threatened to permit foreclosure proceedings, which would eliminate Amerimann's second mortgage on plaintiff's lots. Plaintiff failed to make the required payments for the lots with the intention of purchasing the lots after the bank foreclosed on them and sold them at the foreclosure sale. In order to prevent this action, Amerimann repurchased the two unimproved lots but not the two houses constructed by plaintiff in Savannah, which were foreclosed on by the bank. Plaintiff's partner purchased the two houses at the foreclosure sale and sold them back to plaintiff. Amerimann asked for a written release for all claims upon repurchasing the two unimproved lots, but plaintiff refused. Despite the fact that Amerimann was aware that plaintiff

refused to sign a global settlement agreement, Amerimann proceeded with the closing to repurchase the two lots.

On 5 September 2002, plaintiff filed suit against Mikesh, Sterling Properties, and the Amerimann defendants alleging breach of contract against the Amerimann defendants and material misrepresentation and unfair and deceptive trade practices against all defendants. Defendants moved to dismiss and answered the complaint. Amerimann counterclaimed for unfair and deceptive trade practices based on the friendly foreclosure on the two houses in Savannah. On 3 July 2003, the Sterling defendants moved to amend their answer to include the defenses of estoppel, laches, payment, release, and settlement. All defendants moved for summary judgment. Plaintiff filed a motion to compel or review *in camera* certain documents which the Amerimann defendants claimed were protected by the attorney-client privilege. In addition, plaintiff filed a motion to compel further discovery responses by Mikesh and Sterling Properties (the "Sterling defendants").

On 7 October 2003, the trial court (1) allowed the Sterling defendants' motion to amend; however, no amended answer was ever filed; (2) denied plaintiff's motion to compel or review *in camera* certain documents held by the Amerimann defendants on the grounds that such documents were protected by the attorney-client privilege and were attorney work product; and (3) denied plaintiff's motions to compel discovery responses from Sterling Properties and Mikesh but required those parties to make available all discoverable documents for review and comparison to that which had been produced in discovery with the caveat that such review had to occur not later than 5:00 p.m. on 8 October 2003. On 10 October 2003, the trial court heard defendants' motions for summary judgment and granted summary judgment in orders entered 25 and 26 November 2003. Plaintiff moved the court to make findings of fact and conclusions of law, which the trial court denied. In that order, the trial court found that plaintiff's motions were "not well grounded in fact, not warranted by existing law or a good faith argument . . . [and] were interposed for an improper purpose . . . ." Accordingly, the trial court imposed monetary sanctions of $550.00 in favor of defendants for "the legal fees generated in defense of the motion." Plaintiff appeals.

I. Motion to compel

[1] Plaintiff contends the trial court erred in denying his motion to compel discovery. We disagree. General provisions governing dis-

covery are set forth in N.C. Gen. Stat. § 1A-1, Rule 26 (2003). Discovery methods include, *inter alia*, depositions, interrogatories, and production of or permission to inspect documents. N.C. Gen. Stat. § 1A-1, Rule 26(a). Regarding the scope and limits of discovery, our Legislature has provided, in pertinent part, as follows:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . .

> The frequency or extent of use of the discovery methods set forth in section (a) shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or . . . (iii) the discovery is unduly burdensome or expensive . . .

N.C. Gen. Stat. § 1A-1, Rule 26(b)(1). "Whether or not the party's motion to compel discovery should be granted or denied is within the trial court's sound discretion and will not be reversed absent an abuse of discretion." *Wagoner v. Elkin City Schools' Bd. of Education*, 113 N.C. App. 579, 585, 440 S.E.2d 119, 123, *disc. review denied*, 336 N.C. 615, 447 S.E.2d 414 (1994).

Plaintiff's second and third motions to compel were directed towards Mikesh and Sterling Properties, respectively.[2] The trial court read and reviewed the materials offered, including the responses to plaintiff's discovery requests, and heard arguments. In two orders dated 7 October 2003, the trial court denied plaintiff's motions to compel but permitted plaintiff to review all discoverable documents not later than 5:00 p.m. the following day. Plaintiff first argues the trial court's actions in limiting its discovery in this manner were tantamount to the impositions of sanctions. Nothing in the record or in the trial court's order indicates an intent to impose sanctions on plaintiff concerning the motions to compel, and this argument is summarily rejected.

[2] Plaintiff next asserts that there

> are several key issues in this matter in support of [plaintiff's] allegations[,] [that plaintiff was seeking] to identify all information [the Sterling defendants] asserted constituted the basis for their affirmative defenses [contained in their motion to amend their

---

2. Plaintiff's first motion to compel, directed towards Amerimann and concerning documents produced by Amerimann's attorneys, was denied by the trial court on the grounds that such documents were both privileged and attorney work product. Plaintiff's argument has not challenged this denial on appeal.

answer, that] the information sought by Plaintiff was timely and relevant to the Motion for Summary Judgment[,] [and that] no documents had been produced and . . . the responses to the interrogatories [were] not good faith answers[.]

First, the existence of "key issues" does not necessarily entitle plaintiff to further discovery responses, standing alone. Second, plaintiff's desire to identify information regarding the affirmative defenses to be asserted in an amended answer to plaintiff's complaint is irrelevant in light of the fact that defendants never, in fact, amended their complaint to include these affirmative defenses, and such defenses could not have been the basis upon which the trial court predicated its summary judgment order. Third, plaintiff's unsupported assertions, (1) that the information sought was timely and relevant and (2) that the received responses to discovery requests were insufficient, merely state plaintiff's conclusory opinion. Without more, plaintiff has failed to show an abuse of discretion on the part of the trial judge.

[3] Plaintiff additionally argues the trial court erred in denying the motion but allowing inspection of the relevant documents for only a twenty-four hour period two days before the hearing on defendants' summary judgment motion. While denying the motion and allowing the inspection may appear, on the surface, to be contradictory, we have found no abuse of discretion on the part of the trial court in denying plaintiff's motion to compel, and plaintiff cannot be heard to complain that it was, nonetheless, granted one of the expressly denominated means of discovery under Rule 26. Moreover, regarding the twenty-four hour time period permitted by the trial court, plaintiff has presented no argument as to why that amount of time was insufficient to conduct the review; accordingly, plaintiff has failed to show the trial court abused its discretion.

[4] Plaintiff's related argument, that the trial court erred in granting summary judgment on the grounds that "the time period [for plaintiff] to respond to the Amended [answer] had not expired[,]" is without merit because, as we held *supra*, no amended answer was filed, and the additional affirmative defenses could not have formed the basis upon which the trial court predicated its summary judgment orders.

II. Summary Judgment

Plaintiff asserts the trial court erred in granting summary judgment on his claims in favor of defendants. Summary judgment is a

"somewhat drastic remedy," *see Kessing v. Mortgage Corp.*, 278 N.C. 523, 534, 180 S.E.2d 823, 830 (1971), appropriate only where, viewing the evidence in the light most favorable to the non-moving party, " 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *Citifinancial, Inc. v. Messer*, 167 N.C. App. 742, 744, 606 S.E.2d 453, 455 (2005) (quoting N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003)).

[5] In dealing with the issue of whether the trial court properly granted summary judgment, we must first address and determine the issue of whether there was an agency relationship between the Amerimann defendants and the Sterling defendants. An agent is one who, with another's authority, undertakes the transaction of some business or the management of some affairs on behalf of such other, and to render an account of it. *SNML Corp. v. Bank*, 41 N.C. App. 28, 36, 254 S.E.2d 274, 279 (1979). "There are two essential ingredients in the principal-agent relationship: (1) Authority, either express or implied, of the agent to act for the principal, and (2) the principal's control over the agent." *Vaughn v. Dep't of Human Resources*, 37 N.C. App. 86, 91, 245 S.E.2d 892, 895 (1978). Where the principal held the agent out as possessing authority or permitted the agent to represent that he possessed authority, it is said that the agent was clothed with apparent authority, and the principal may be held liable if a third person, in the exercise of reasonable care, justifiably believed the principal had conferred such authority on the agent. *Zimmerman v. Hogg & Allen, Professional Assoc.*, 286 N.C. 24, 31, 209 S.E.2d 795, 799 (1974).

In the instant case, the evidence of record indicates that, besides being a listing agent in Savannah, Mikesh (1) was involved in development, sales, and closing issues in Savannah, as well as infrastructure issues such as sewer lines and easements; (2) was considered to be a member of Amerimann's staff; (3) supervised the daily activities of the subcontractors in Savannah and received direct remuneration from Amerimann for such services; and (4) signed certain documents, including construction agreements for residential housing, on behalf of Amerimann Homes. Indeed, Rocky Manning, the President of Amerimann, deposed he "delegated the majority of the responsibilities" in the construction of a home for Amerimann Homes. Given the sweeping powers exercised by Mikesh with Amerimann's knowledge and consent, we hold that there remains a genuine issue of material

fact as to the existence of an agency relationship and, for purposes of this appeal, assume such existence for determination of the issues presented.

## A. Breach of Contract

**[6]** Regarding plaintiff's breach of contract claim against Amerimann, plaintiff asserts that the "complete agreement with [Amerimann]" consists not only of the written agreement containing the merger clause but also the oral representations by Mikesh. "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of [the] contract." *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). Plaintiff's assertions, that the duties as contemplated by the express provisions of the contract do not fully encompass the obligations of the parties, rely on parol evidence. "The parol evidence rule excludes prior or contemporaneous oral agreements which are inconsistent with a written contract if the written contract contains the complete agreement of the parties." *Cable TV, Inc. v. Theatre Supply Co.*, 62 N.C. App. 61, 64-65, 302 S.E.2d 458, 460 (1983) (applying the parol evidence rule where the written contract included a merger clause similar to the one in the instant case). We hold the contract contains the complete agreement of the parties, and plaintiff's attempt to enlarge or vary Amerimann's duties from those expressly undertaken in the contract is barred by the written terms of the contract and the merger clause, which provides that "all prior agreements and understandings, whether oral or written, between the parties" are superseded. Accordingly, the merger clause bars the parol evidence concerning an oral contract upon which plaintiff premises his breach of contract claim.

Plaintiff argues, in the alternative, that the merger clause should not be given effect. Plaintiff, citing *Zinn v. Walker*, 87 N.C. App. 325, 334, 361 S.E.2d 314, 319 (1987), asserts that "giving effect to the merger clause would frustrate and distort the parties' true intentions and understanding regarding the contract." The contracts in the instant case were for the sale of four lots located in Savannah, and the provisions in that contract fully carry out that intent. Plaintiff's unilateral expectations with respect to the contracts' terms do not indicate that the purpose of the contracts has been frustrated. Rather, plaintiff desires to add certain obligations and duties to those to which Amerimann expressly agreed. Giving effect to the merger clause, under these facts, neither frustrates nor distorts the parties' true intentions regarding the contractual sale of the lots. Accordingly,

this assignment of error is overruled, and the trial court properly entered summary judgment in favor of Amerimann on plaintiff's breach of contract claim.

## B. Fraud

[7] To preclude "crafty men [from] find[ing] a way of committing fraud which avoids the definition[,]" our appellate courts have abstained from defining fraud in favor of setting forth the following essential elements: "(1) False representation or concealment of a [past or existing] material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974).[3] Defendant first asserts summary judgment was appropriate because plaintiff did not sufficiently plead fraud in his complaint. Specifically, defendant contends plaintiff did not sufficiently allege that defendants made any alleged misrepresentations with knowledge of their falsity. While knowledge and intent must be alleged in the complaint, our Supreme Court has noted that it is sufficient if fraudulent intent may reasonably be inferred, presumed, or necessarily results from the facts alleged. *See Cotton Mills v. Manufacturing*, 218 N.C. 560, 562, 11 S.E.2d 550, 551 (1940). Such is the case where, as here, plaintiff alleged that only three homes were sold at the time Mikesh represented seven homes had been sold. In addition, plaintiff alleged Mikesh misrepresented, *inter alia*, that additional exclusive builders were needed because the current builder could not build homes fast enough and customers were "lined up and waiting to meet" plaintiff.

[8] Defendant also argues the trial court's summary judgment on plaintiff's claim of fraud must be upheld on the grounds that there was no misrepresentation regarding a past or existing material fact. Defendant's argument is manifestly in error with respect to Mikesh's representation as to the actual number of sales which had already occurred in Savannah. Mikesh's representations as to the current demand in Savannah likewise survive summary judgment under our

---

3. Unlike in plaintiff's breach of contract claim, where " '[t]he parol evidence rule presupposes the existence of a legally effective written instrument,' " *Mackey v. McIntosh*, 270 N.C. 69, 73, 153 S.E.2d 800, 803-04 (1967), and precludes use of parol evidence to vary or contradict the terms of that instrument, the parol evidence rule does not bar the admission of parol evidence "to prove that a written contract was procured by fraud because 'the allegations of fraud challenge the validity of the contract itself, not the accuracy of its terms[.]' " *Godfrey v. Res-Care, Inc.*, 165 N.C. App. 68, 78, 598 S.E.2d 396, 403 (2004) (quoting *Fox v. Southern Appliances*, 264 N.C. 267, 270, 141 S.E.2d 522, 525 (1965)).

Supreme Court's holding in *Ragsdale*, 286 N.C. at 138-39, 209 S.E.2d at 500-01 (disallowing summary judgment in favor of a president of a corporation who had peculiar knowledge of the facts and knew that the business had lost money, yet made positive representations that the corporation was a "gold mine" and a "going concern" on the grounds that it was a jury question as to whether such representations were intended and received as expressions of opinion or statements of material fact).

[9] Defendants next argue that summary judgment was appropriate because plaintiff "had [and availed itself of] the opportunity to independently investigate the viability of the Savannah project." Defendants cite *Hudson-Cole Dev. Corp. v. Beemer*, 132 N.C. App. 341, 346, 511 S.E.2d 309, 313 (1999) for the proposition that where one relies on a "misleading representation, [but] could have discovered the truth upon inquiry, the complaint must allege that he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence."

"Even if there is no duty to disclose information, if a seller does speak then he must make a full and fair disclosure of the matters he discloses." *Freese v. Smith*, 110 N.C. App. 28, 35, 428 S.E.2d 841, 846 (1993). In replying to claims that a false representation was not justifiably or reasonably relied upon, our Supreme Court has stated that "[t]he law does not require a prudent man to deal with everyone as a rascal and demand covenants to guard against the falsehood of every representation which may be made as to facts which constitute material inducements to a contract[.]" *Johnson v. Owens*, 263 N.C. 754, 758, 140 S.E.2d 311, 314 (1965) (citations and quotation marks omitted). Our Supreme Court further elaborated that reliance may be unreasonable, but, in close cases, sellers intentionally and falsely representing material facts so as to induce a party to action "should not be permitted to say in effect, 'You ought not to have trusted me. If you had not been so gullible, ignorant, or negligent, I could not have deceived you.' " *Id.* In another case, our Supreme Court examined a defendant's demurrer on the grounds that the plaintiffs "could have ascertained by an accurate survey of the lines and boundaries of the land whether [certain land with timber] was included" and determined that "the defendants cannot complain if the plaintiffs relied upon the defendants' positive representation . . . that the timber on this parcel of land was a part of that being sold." *Keith v. Wilder*, 241 N.C. 672, 676, 86 S.E.2d 444, 447 (1955).

Based on the precedent laid down by our Supreme Court, we hold plaintiff's fraud claim is not barred on the grounds that plaintiff had some lesser opportunity to investigate the various representations made by Mikesh, who possessed superior knowledge on such matters. Indeed, certain representations by Mikesh could not be readily or easily verified. Moreover, we hold, in light of the scope and nature of Mikesh's positive assertions and our standard of review, that defendants are not entitled, as a matter of law, to summary judgment on plaintiff's claim of fraud.

C. Unfair and Deceptive Trade Practices

[10] The elements for a claim for unfair and deceptive trade practices are (1) defendants committed an unfair or deceptive act or practice, (2) in or affecting commerce and (3) plaintiff was injured as a result. *Edwards v. West*, 128 N.C. App. 570, 574, 495 S.E.2d 920, 923 (1998). Concerning trade practices, unfair denotes a practice that "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers[,]" and deceptive denotes a practice that "has the capacity or tendency to deceive." *Id.* (internal citations and quotation marks omitted). Whether facts that are proven establish an unfair or deceptive trade practice is a question of law addressed by the court. *Id.*, 128 N.C. App. at 574, 495 S.E.2d at 923-24. Given our discussion *supra* and taking the evidence in the light most favorable to the nonmoving party, plaintiff's unfair and deceptive trade practice claim is sufficient to survive summary judgment.

D. Settlement

[11] Defendants alternatively assert that plaintiff's claims are susceptible to summary judgment because the parties fully settled all claims when Amerimann purchased the two undeveloped lots from plaintiff. Defendants point out that Phelps testified he procured an attorney to negotiate a pullout from Savannah and those negotiations resulted in the agreement to buy back the two undeveloped lots. Defendants further correctly point out that they responded to plaintiff's demand that they repurchase all four lots, including the two constructed houses with the offer to purchase only the two lots. Nonetheless, the evidence of record does not support the conclusion that summary judgment was appropriate on the basis of any global settlement of plaintiff's claims.

First, as noted above, at the time of closing on the two undeveloped lots, defendants unsuccessfully sought a written settlement agreement yet proceeded with the closings on the two lots regardless

of having failed to procure such a settlement. Second, a letter from Amerimann's attorney regarding the repurchase of the two lots stated that "the primary reason for purchasing those two lots was to protect [Amerimann's] purchase money second deeds of trust . . . in the amount of $40,000.00 [on each lot] from being extinguished by friendly foreclosures and losing that amount of principal." That letter goes on to also note plaintiff's refusal to sign a written release and Amerimann's decision to "ultimately proceed[] with buying [the two undeveloped lots] to protect [its] equity in those two lots." Third, plaintiff unequivocally testified in his deposition that, at no time, did plaintiff consider the repurchase of the undeveloped lots to be a settlement of all claims. At the very least, these facts present a genuine issue concerning settlement, and summary judgment cannot be premised upon this ground.

III.  Sanctions

**[12]** Plaintiff asserts the trial court erred in imposing, *sua sponte*, sanctions in response to plaintiff's motion to amend the summary judgment order to include findings of fact and conclusions of law. The imposition of sanctions by the trial court under N.C. Gen. Stat. § 1A-1, Rule 11 (2003) is reviewed *de novo*. *Williams v. Hinton*, 127 N.C. App. 421, 423, 490 S.E.2d 239, 240 (1997). Plaintiff points out that this Court has conceded that "in rare situations it can be helpful for the trial court to set out the *undisputed* facts which form the basis for his judgment." *Capps v. City of Raleigh*, 35 N.C. App. 290, 292, 241 S.E.2d 527, 529 (1978). However, our long-standing rule has been, and remains, that findings of fact are superfluous in summary judgment orders. We are unpersuaded that this is one of those rare cases which warrants findings concerning the undisputed facts or conclusions of law by the trial court and uphold the sanctions imposed.

Affirmed in part, reversed in part and remanded.

Judges HUNTER and JACKSON concur.