Le Bleu Corp. v. B. Kelley Enters., Inc., 2014 NCBC 61.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| COUNTY OF FORSYTH | 13 CVS 3109 |

LE BLEU CORPORATION; and SCP )
DISTRIBUTION, LLC d/b/a LE BLEU )
OF THE PIEDMONT TRIAD, )
                        )
         Plaintiffs, )
                        )
      v.                )
                        )         **ORDER**
B. KELLEY ENTERPRISES, INC. )
d/b/a BLUE CAFFE, INC.; ROBIN )
LEBORGNE; and BRADLEY S. )
KELLEY, )
                        )
         Defendants. )
                        )

{1}    THIS MATTER is before the Court on Defendants' Motion to Compel Discovery and Plaintiffs' Motion for Protective Order ("Motions"), made pursuant to Rules 26(c), 30(b)(6), and 37(a)(2) of the North Carolina Rules of Civil Procedure ("Rule(s)"). For the reasons expressed below, the Motion for Protective Order is GRANTED and the Motion to Compel is DENIED.

> *Wilson Helms & Cartledge, LLP by G. Gray Wilson and Stuart H. Russell for Plaintiffs.*

> *Caudle & Spears, P.A. by Harold Craig Spears and Christopher P. Raab for Defendants.*

Gale, Chief Judge.

## I.    BACKGROUND

{2}    Plaintiffs Le Bleu Corporation ("Le Bleu") and SCP Distribution, LLC ("Triad") manufacture, sell, and distribute bottled water in the southeast.

{3}    Defendant B. Kelley Enterprises, Inc. ("Blue Caffé") is a point-of-service water distributor that supplies in-house water filtration systems to

businesses in North Carolina.  Individual Defendants Robin Leborgne and Bradley S. Kelley are Blue Caffé Employees.

{4}     Plaintiffs contend that Defendants have improperly attempted to obtain Le Bleu customers, *inter alia*, by making disparaging and false representations regarding the cleanliness of Le Bleu's water bottles, with apparent intent to encourage customers to switch from a bottle system to a filter system. Plaintiffs further contend that Defendants have misappropriated Plaintiffs' trade secret information and induced former employees to violate their covenants not to compete.[1]  Defendants apparently contend that Plaintiffs' employees, rather than Defendants', actually did some of the complained-of acts.

{5}     Plaintiffs initiated this action on May 13, 2013.  On June 27, 2014, Plaintiffs filed their First Amended Complaint ("Amended Complaint"), which adds Bradley S. Kelley as a defendant and includes claims for defamation, trade secret misappropriation, tortious interference with contract, and unfair trade practices. Defendants vigorously contest Plaintiffs' unfair and deceptive trade practices claim. They have not filed any counterclaim asserting Plaintiffs' unfair or deceptive practices.

{6}     On July 11, 2014, Defendants filed a Notice of Designation of the case as a mandatory complex business case, based on the Amended Complaint.  The case was so designated and assigned to the undersigned on July 22, 2014.  Former Chief Judge Jolly overruled Plaintiffs' Opposition to Designation by Order dated September 19, 2014.

{7}     In March 2014, prior to designation, Defendants had moved to compel Rule 30(b)(6) depositions of Plaintiffs.  The disputed topics subject to the motion have been narrowed to the following topics: (1) "the means, methods and processes by which [Plaintiffs] bottle, distribute and sell [their] water products and services;" (2) "the sale of [Plaintiffs'] products and services, including sales organization, strategies, methods, processes, training, manuals, and personnel;" and (3)

---

[1] Defendants have moved to dismiss the trade secrets claim.  The Court will issue a separate order regarding that motion.

"[Plaintiffs'] key sales management and personnel."[2] (Am. Notice 30(b)(6) Dep. Le Bleu Corp. Ex. A, ¶¶ 24, 29, 38; Am. Notice 30(b)(6) Dep. SCP Distribution, LLC Ex. A, ¶¶ 24, 29, 38; Br. Supp. Defs.' Mot. Compel Disc. and Opp'n Pls.' Mot. Protective Order ("Defs. Supp. Br.") 1.) Plaintiffs filed their Motion for Protective Order to block this discovery.

{8} The central legal issue raised in the respective motions is whether discovery into Plaintiffs' general sales practices, methods, and personnel information is relevant to a defense to Plaintiffs' unfair trade practices claim. Plaintiffs contest that discovery on those topics must be confined to the facts and circumstances directly related to specific lost customers that form the basis for Plaintiffs' damages.[3] Plaintiffs concede that discovery may be relevant to the proximate cause of Plaintiffs' damages as to specific customers, but assert that Defendants cannot defend their own conduct by complaining of Plaintiffs' own general practices. Defendants counter that the discovery is appropriate to define an industry standard.

{9} The Motions have been fully briefed and are ripe for ruling.

## II. LEGAL STANDARD

{10} A party "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." N.C. R. Civ. P. 26(b)(1). Information is considered relevant if it "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Conversely, a trial court may limit discovery for good cause shown to prevent "unreasonable annoyance, embarrassment, oppression, or undue burden or expense." N.C. R. Civ. P. 26(c); *Tenn.-Carolina Transp., Inc. v. Strick Corp.*, 291 N.C. 618, 626, 231 S.E.2d 597, 602 (1977). When faced with competing motions to compel or for a protective order, a court resolves the issues by the exercise of its sound discretion. *Phelps-Dickson*

---

[2] The parties reached agreement on other issues and narrowed their dispute to those three topics.
[3] Plaintiffs indicate other agreed-to topics in the Rule 30(b)(6) Notice would reach these areas of discovery.

*Builders, LLC v. Amerimann Partners*, 172 N.C. App. 427, 433, 617 S.E.2d 664, 668 (2005).

## III.   ANALYSIS

{11}   The Court begins its inquiry by examining the elements of Plaintiffs' claim and the defense to which the discovery is directed.  To prevail on a claim for violation of the Unfair and Deceptive Trade Practices Act ("UDTPA"), the plaintiff must establish that the defendant committed an unfair or deceptive act or practice, in or affecting commerce, which proximately caused injury to the plaintiff.  *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000).  The North Carolina Supreme Court has stated that "[a] practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). A relevant inquiry is "the impact the practice has in the marketplace." *Id.*

{12}   Courts have used various approaches to define a standard by which to determine whether a defendant's conduct is unfair or deceptive.  They have occasionally used industry standards to do so.  In some instances, courts have referred to industry standards in rejecting liability when the plaintiff seeks to impose on the defendant an obligation that is not typical to the defendant's industry.  One commentator has observed that trade customs or industry standards may have been employed to give more specific meaning to the somewhat amorphous concept of "ethical business practices."  G. Richard Shell, *Substituting Ethical Standards for Common Law Rules in Commercial Cases: An Emerging Statutory Trend*, 82 Nw. U. L. Rev. 1198, 1198, 1254 n.3 (1988) (noting recent trend in states adopting UDTP acts to rely on and maintain ethical standards for "proper conduct arising from day-to-day practices of *particular commercial sectors* and of commercial activity generally." (emphasis added)).

{13}   North Carolina court decisions have referenced general industry standards but have not adopted or referred to them as the controlling factor in

defending a UDTPA claim. Conversely, the North Carolina Court of Appeals determined that a violation of industry standards does not necessarily constitute an actionable unfair or deceptive trade practice. *In re Fifth Third Bank, Nat Ass'n-Vill. of Pendland Litig.*, 217 N.C. App. 199, 209, 719 S.E.2d 171, 178 (2011). In another case, the North Carolina Court of Appeals recognized generally that a defendant might be fairly accused of an unfair or deceptive practice if it "breach[ed] . . . industry standards," but did not further analyze the issue, instead finding that the plaintiff had abandoned the allegation by failing to cite further legal authority or evidentiary support for its claim. *Melton v. Family First Mortg. Corp.*, 156 N.C. App. 129, 134, 576 S.E.2d 365, 369 (2003). In another case, the North Carolina Court of Appeals recognized that a defendant may refer to general industry practices to defend a claim of an unfair or deceptive trade practice when the plaintiff seeks to impose an obligation that public policy does not require and is not typical to practices within the defendant's industry. *Ramsey v. Keever's Used Cars*, 92 N.C. App. 187, 191, 374 S.E.2d 135, 138 (1988) (holding failure to do complete title search not actionable when not common practice in used vehicle industry and failure did not otherwise offend established public policy).

{14}    Cases from other states recognize that proof that a defendant conformed to an industry standard is not necessarily a valid defense to a UDTPA claim. *See People (ex. rel. Van de Kamp) v. Cappuccio*, 204 Cal. App. 3d 750, 755, 763 (1988) ("[F]airness, as based upon an industry-wide custom and practice, is not a defense in this case.") (considering industry custom in context of California's unfair business competition statute); *Commonwealth v. DeCotis*, 316 N.E.2d 748, 753 (Mass. 1974) ("[T]he existence of an industry-wide practice would not constitute a defense to [an action for unfair or deceptive conduct].").

{15}    In sum, the Court's review of these various cases indicates that while industry practices may be considered when determining whether a defendant's conduct falls below ethical business standards or a general commercial standard of ethical dealing, that is not dispositive as to whether a certain act is unfair or deceptive.

{16}    In this case, Defendants' proposed discovery at issue seeks to require Plaintiffs to produce broad discovery as to their general sales practices. The topics as proposed extend well beyond Plaintiffs' acts with regard to specific customers that are the subject of Plaintiffs' damages claims. The purpose appears to be an effort to demonstrate that Plaintiffs should be barred from pursuing an unfair trade practices claim based on a theory of *in pari delicto*, or alternatively that Defendants are not liable because their challenged acts are typical to the industry. The Court does not believe either defense is allowed by North Carolina appellate precedent.[4]

{17}    In *Winston Realty Co. v. G.H.G., Inc.*, the North Carolina Supreme Court reasoned that because the effect of the actor's conduct on the marketplace is of "sole relevance" to a UDTPA claim, "then it follows that plaintiff's alleged conduct here, contributory negligence, is not relevant." 314 N.C. 90, 95, 331 S.E.2d 677, 680 (1985). Extending this logic, the North Carolina Court of Appeals later held that a defendant could not defend against its own liability by presenting evidence of the plaintiff's own similar unfair practices, reasoning that "if a UDTP claimant can establish that the defendant committed commercial bribery, that is sufficient to make the UDTP claim. However, it does not follow from that holding that if the plaintiff commits commercial bribery, the defendant is not liable under the UDTP claim." *Media Network, Inc. v. Long Haymes Carr, Inc.*, 197 N.C. App. 433, 453, 678 S.E.2d 671, 684 (2009) (internal citations omitted).

{18}    The Court believes that *Winston Realty* and *Media Network* articulate a rule that a plaintiff's own conduct is not a measure of or a defense to its UDTPA claim against a defendant and that Defendants cannot prove an act is not unfair or deceptive just because others in the industry engage in the same practices. The Court further finds the above-cited decisions of the California and Massachusetts courts are in accord and persuasive.

---

[4] Moreover, the Court does not believe that establishing the trade practices of two businesses within a broad industry would establish an industry standard even if it were a relevant consideration.

{19}     The Court therefore concludes that the categories of Defendants' Rule 30(b)(6) notice related to: (1) "the means, methods and processes by which [Plaintiffs] bottle, distribute and sell [their] water products and services;" (2) "the sale of [Plaintiffs'] products and services, including sales organization, strategies, methods, processes, training, manuals, and personnel;" and (3) "[Plaintiffs'] key sales management and personnel" should not be allowed except as related to the issue of the proximate cause of Plaintiffs' damages.  In the exercise of its discretion, and pursuant to Rule 26(c), the Court therefore grants a protective order precluding this broad discovery reflected by the three noticed topics at issue, to prevent deposition on those topics.  The Court further denies the motion seeking to compel that discovery.

{20}     This ruling does not, however, foreclose discovery as to such sales, practices, methods, and personnel undertaken with regard to specific customers that Plaintiffs contend were lost, as such discovery may be relevant to the issue of whether Defendants' conduct was the proximate cause of Plaintiffs' claimed losses. The Court accepts Plaintiffs' acknowledgment that other topics in the Rule 30(b)(6) Amended Notices allow for that discovery.

{21}     In sum, Defendants shall be allowed to inquire as to the specific circumstances regarding Plaintiffs' and Defendants' communications or sales efforts as to customers that Plaintiffs contend were lost or from which sales were reduced as a result of Defendants' conduct.  Defendants are not, however, entitled to further pursue broad discovery of Plaintiffs' general sales practice, methods, or personnel that is not directly related to such specific customers.

{22}     For the foregoing reasons, the Motion for Protective Order is GRANTED consistent with the limitations of this Order and the Motion to Compel is DENIED.

IT IS SO ORDERED this the 21st day of November, 2014.