Reynolds Am. Inc. v. Third Motion Equities Master Fund Ltd., 2018 NCBC 114.

STATE OF NORTH CAROLINA

FORSYTH COUNTY

REYNOLDS AMERICAN INC.,

              Plaintiff,

v.

THIRD MOTION EQUITIES
MASTER FUND LTD.; MAGNETAR
CAPITAL MASTER FUND, LTD.;
SPECTRUM OPPORTUNITIES
MASTER FUND LTD.; MAGNETAR
FUNDAMENTAL STRATEGIES
MASTER FUNDS LTD.;
MAGNETAR MSW MASTER FUND
LTD.; MASON CAPITAL MASTER
FUND, L.P.; ANTON S.
KAWALSKY, trustee for the benefit
of Anton S. Kawalsky Trust UA
9/17/2015; CANYON BLUE CREDIT
INVESTMENT FUND L.P.; THE
CANYON VALUE REALIZATION
MASTER FUND, L.P.; CANYON
VALUE REALIZATION FUND,
L.P.; BLUE MOUNTAIN CREDIT
ALTERNATIVES MASTER FUND
L.P.; BLUEMOUNTAIN FOINAVEN
MASTER FUND L.P.;
BLUEMOUNTAIN GUADALUPE
PEAK FUND L.P.;
BLUEMOUNTAIN SUMMIT
TRADING L.P.; BLUEMOUNTAIN
MONTENVERS MASTER FUND
SCA SICAV-SIF; AMUNDI
ABSOLUTE RETURN CANYON
FUND P.L.C.; CANYON-SL
VALUE FUND, L.P.; PERMAL
CANYON IO LTD.; CANYON
VALUE REALIZATION MAC 18
LTD.; and BARRY W. BLANK
TRUST,

              Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 7086

**ORDER AND OPINION ON
PLAINTIFF'S OCTOBER 10, 2018 BCR
10.9 SUMMARIES**

1.     **THIS MATTER** is before the Court upon Plaintiff Reynolds American Inc.'s ("Reynolds" or "RAI") October 10, 2018 Business Court Rule ("BCR") 10.9 Summaries (the "Summaries") in the above-captioned case.

2.     After considering the parties' BCR 10.9 submissions and the arguments of counsel on an October 24, 2018 videoconference call, the Court decides this matter as set forth herein.

> *Cravath, Swaine & Moore LLP, by Gary A. Bornstein, Thomas G. Rafferty, Samira Shah, and Nicole D. Valente, and Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP, by Donald H. Tucker, Jr., Christopher B. Capel, and Clifton L. Brinson, for Plaintiff Reynolds American Inc.*

> *Lowenstein Sandler LLP, by Sheila A. Sadighi, Maya Ginsburg, Lawrence M. Rolnick, Jennifer A. Randolph, and Thomas E. Redburn, Jr., and Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by Jennifer K. Van Zant and Jessica Thaller-Moran, for Defendants Mason Capital Master Fund, L.P., Anton S. Kawalsky, Canyon Blue Credit Investment Fund L.P., Canyon Value Realization Master Fund, L.P., Canyon Value Realization Fund, L.P., Blue Mountain Credit Alternatives Master Fund L.P., BlueMountain Foinaven Master Fund L.P., BlueMountain Guadalupe Peak Fund L.P., BlueMountain Summit Trading L.P., BlueMountain Montenvers Master Fund SCA SICAV-SIF, Amundi Absolute Return Canyon Fund P.L.C., Canyon-SL Value Fund, L.P., Permal Canyon IO Ltd., and Canyon Value Realization MAC 18 Ltd.*

> *Abrams & Bayliss LLP, by Sarah E. Delia and Kevin G. Abrams, and Ellis & Winters LLP, by George F. Sanderson, III and Troy D. Shelton, for Defendants Magnetar Capital Master Fund, Ltd., Magnetar Fundamental Strategies Master Fund Ltd., Magnetar MSW Master Fund Ltd., Third Motion Equities Master Fund Ltd., and Spectrum Opportunities Master Fund Ltd.*

> *Shanahan McDougal, PLLC, by Gregg E. McDougal, Brandon S. Neuman, and H. Denton Worrell, for Defendant Barry W. Blank Trust.*

Bledsoe, Chief Judge.

I.

BACKGROUND

3. This lawsuit is a judicial appraisal action under N.C. Gen. Stat. § 55-13-30 to determine the fair value of Defendants' common stock in Reynolds. On July 25, 2017, Reynolds merged into an indirect, wholly owned subsidiary of British American Tobacco p.l.c. (the "Merger"). Defendants are former Reynolds shareholders.

4. On May 4, 2018, Reynolds served its first set of requests for production of documents directed to all Defendants (the "Requests"). Responding to these Requests, Defendants Mason Capital Master Fund, L.P.; The Canyon Value Realization Master Fund, L.P.; Canyon Value Realization Fund, L.P.; Canyon Blue Credit Investment Fund L.P.; Canyon-SL Value Fund, L.P.; Permal Canyon IO Ltd.; Canyon Value Realization MAC 18 Ltd.; Amundi Absolute Return Canyon Fund P.L.C.; Anton S. Kawalsky; Blue Mountain Credit Alternatives Master Fund L.P.; BlueMountain Summit Trading L.P.; BlueMountain Montenvers Master Fund SCA SICAV-SIF; BlueMountain Foinaven Master Fund L.P.; and BlueMountain Guadalupe Peak Fund L.P. (collectively, the "CMB Defendants") made general and specific objections. Particularly, the CMB Defendants objected to and refused to produce documents responsive to Requests 7, 8, 9(a), 13, 14, 15, 16, and 20 (collectively, the "Disputed Requests").

5. In its Summaries submitted to the Court under BCR 10.9, Reynolds asks that the Court order the CMB Defendants to produce documents responsive to the

Disputed Requests. Pursuant to BCR 10.9(b)(1), the CMB Defendants submitted responses to Reynolds's Summaries.

6. The Court held a BCR 10.9 videoconference call on Reynolds's Summaries on October 24, 2018. All parties to this action were represented on the videoconference by counsel.

7. These issues are ripe for resolution.[1]

## II.

## LEGAL STANDARD

8. Parties participating in a judicial appraisal action under N.C. Gen. Stat. § 55-13-30 are entitled to the same discovery rights as parties in other civil proceedings. *See* N.C. Gen. Stat. § 55-13-30(d); Russell M. Robinson, II, *Robinson on North Carolina Corporation Law* § 27.04 (7th ed. 2017). "The primary purpose of the discovery rules is to facilitate the disclosure prior to trial of any unprivileged information that is relevant and material to the lawsuit so as to permit the narrowing and sharpening of the basic issues and facts that will require trial." *Friday Invs., LLC v. Bally Total Fitness of the Mid-Atl., Inc.*, 805 S.E.2d 664, 667 (N.C. 2017) (emphasis omitted) (quoting *Bumgarner v. Reneau*, 332 N.C. 624, 628, 422 S.E.2d 686, 688–89 (1992)). Rule 26 of the North Carolina Rules of Civil Procedure ensures that this process is carried out by allowing parties to "obtain

---

[1] Despite mutual agreement between the parties on the October 24 videoconference call that additional briefing was unnecessary, the CMB Defendants submitted a further BCR 10.9 statement to the Court by e-mail on October 25, 2018. Reynolds objected to this submission and requested a chance to file a response. The Court has reviewed the CMB Defendants' additional submission and concludes that a response from Reynolds is not necessary.

discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." N.C. R. Civ. P. 26(b)(1).

9. In answering what matters are "relevant" under Rule 26, courts of this State have long recognized that "[t]he relevancy test for discovery is not the same as the relevancy test for admissibility into evidence. To be relevant for purposes of discovery, the information [sought] need only be 'reasonably calculated' to lead to the discovery of admissible evidence." *Shellhorn v. Brad Ragan, Inc.*, 38 N.C. App. 310, 314, 248 S.E.2d 103, 106 (1978); *see* N.C. R. Civ. P. 26(b)(1); *Lowd v. Reynolds*, 205 N.C. App. 208, 214, 695 S.E.2d 479, 483 (2010). This liberal standard is not without limits, however, and our Supreme Court has cautioned that the Rules of Civil Procedure should not be interpreted to allow parties "to roam at will in the closets of . . . other[s]." *Willis v. Duke Power Co.*, 291 N.C. 19, 34, 229 S.E.2d 191, 200 (1976).

10. Whether or not a party's request to compel discovery should be granted or denied "is within the trial court's sound discretion," and the trial judge's decision on such matters "will not be reversed absent an abuse of discretion." *Phelps-Dickson Builders, L.L.C. v. Amerimann Partners*, 172 N.C. App. 427, 433, 617 S.E.2d 664, 668 (2005) (quoting *Wagoner v. Elkin City Sch. Bd. of Educ.*, 113 N.C. App. 579, 585, 440 S.E.2d 119, 123 (1994)).

III.

ANALYSIS

11. Reynolds contends that the Disputed Requests are appropriate under Rule 26 because they seek documents that may be relevant to (i) the CMB Defendants'

methods of valuing Reynolds common stock before the commencement of these proceedings and (ii) the credibility of the CMB Defendants' proffered valuations. The CMB Defendants respond that the Disputed Requests are overbroad and solicit irrelevant information.

12. The question of fair value in a judicial appraisal action is resolved by the court; there is no right to a trial by jury. N.C. Gen. Stat. § 55-13-30(d). In making its determination as to fair value, the court "can consider a wide range of factual evidence[.]" *Reynolds Am. Inc. v. Third Motion Equities Master Fund, Ltd.*, 2018 NCBC LEXIS 94, at *7–8 (N.C. Super. Ct. Sept. 12, 2018) (quoting *In re Dole Food Co.*, 114 A.3d 541, 550 (Del. Ch. 2014)). This range of evidence includes "documents pertaining to pre-suit valuations of a company or its shares," which may "assist the court in weighing the validity and credibility of each party's stance in the appraisal proceeding." *Id.* at *8.

13. The Disputed Requests, however, not only seek documents relating directly to pre-litigation valuations, but also call for, among other things, documents related to the CMB Defendants' decision to oppose the Merger, other litigation in which the CMB Defendants have been involved, and the CMB Defendants' investment policies. The issue before the Court is thus whether these Requests are reasonably calculated to lead to the discovery of admissible evidence bearing on the validity and credibility of the CMB Defendants' valuations or whether—as the CMB Defendants contend—Reynolds is embarking on an impermissible fishing expedition. *See Dworsky v. Travelers Ins. Co.*, 49 N.C. App. 446, 448, 271 S.E.2d 522, 524 (1980).

A.    Request 7

14.    Request 7 seeks "Documents[2] relating to the Defendants' determinations of their respective Per Share [Fair Value] Estimates."  (Pl.'s First Req. Produc. Docs. Directed All Defs. 9.)  Reynolds argues that Request 7 is relevant for purposes of discovery in that it seeks documents related to the October 12, 2017 pre-litigation per-share fair value estimate that the CMB Defendants submitted to Reynolds pursuant to N.C. Gen. Stat. § 55-13-28.  Because the value of Defendants' shares is a central issue in this litigation, and because the Court has previously ruled that certain pre-litigation valuations of Reynolds securities by other Defendants are relevant under Rule 26, *Reynolds Am. Inc.*, 2018 NCBC LEXIS 94, at *8–9, Reynolds contends that the CMB Defendants should be compelled to provide documents responsive to Request 7.

15.    The CMB Defendants counter by pointing out that the documents sought by Request 7 were prepared by the CMB Defendants' valuation expert to satisfy a statutory requirement for perfecting the CMB Defendants' appraisal rights.  The CMB Defendants argue that requiring the production of these documents would violate the terms of the protocol governing expert discovery in this case, which provides that "draft reports, . . . preliminary or intermediate calculations, computations, . . . data," or other "draft materials" prepared by an expert are not discoverable.  (Order Entering Expert Disc. Protocol ¶ 3(a), ECF No. 69.)  The CMB Defendants also characterize these documents as the "preliminary work product" of

---

[2] When quoting Reynolds's Requests, the Court retains the Requests' original capitalization, signifying defined terms.

their valuation expert. (Canyon, Mason, and BlueMountain Dissenters' Opp'n Pl.'s Rule 10.9(b) Submission Regarding Dissenters' Resp. Doc. Reqs. Nos. 7, 8, 9, 13 and 20, at 1.)

16. The Court does not find the CMB Defendants' arguments painting Request 7 as early expert discovery or a request for expert draft materials (as that term is used in the expert discovery protocol) persuasive. First, documents relating to the CMB Defendants' pre-litigation valuations of their shares are relevant to the ultimate question in this case—the actual value of those shares. *See Reynolds Am. Inc.*, 2018 NCBC LEXIS 94, at *7–8. Second, although the documents sought by Request 7 may have been prepared by the same person that the CMB Defendants anticipate tendering as an expert, those documents relate to the preparation of a pre-litigation valuation that the CMB Defendants ultimately relied on and delivered to Reynolds as a prerequisite for asserting their appraisal rights. *See* N.C. Gen. Stat. § 55-13-28(a)–(b) (requiring a dissatisfied shareholder to notify the corporation of the shareholder's estimate of fair value within thirty days of receipt of the corporation's payment or offer of payment). The documents were not produced or drafted by the CMB Defendants' expert as part of these proceedings, and the expert's pre-litigation valuation was based on a more limited record than that forecast to support the CMB Defendants' expert opinions at trial. The Court thus concludes that Request 7 is reasonably calculated to lead to the discovery of admissible evidence and does not violate the expert discovery protocol. To the extent the CMB Defendants assert that documents responsive to Request 7 constitute protected work product, such

documents should be handled in the manner described in the Amended Case Management Order entered by the Court on April 10, 2018.

B. Requests 8, 9(a), 13, and 20

17. Requests 8, 9(a), 13, and 20 seek documents related to the CMB Defendants' decisions to contest the Merger and assert their appraisal rights. In particular, these Requests seek the following sets of documents:

a. Request 8: "All Documents relating to the Defendants' decisions to contest RAI's Per Share [Fair Value] Estimate." (Pl.'s First Req. Produc. Docs. Directed All Defs. 9.)

b. Request 9(a): "All Documents relating to the decisions by Defendants regarding (a) whether to assert Appraisal Rights[.]" (Pl.'s First Req. Produc. Docs. Directed All Defs. 9.)

c. Request 13: "All Documents relating to any Communications concerning the Merger or Defendants' decision to assert Appraisal Rights or Defendants' responses to the Appraisal Notices." (Pl.'s First Req. Produc. Docs. Directed All Defs. 10.)

d. Request 20: "All Documents relating to Defendants' consideration of how to vote, or abstain from voting, their shares of RAI Securities." (Pl.'s First Req. Produc. Docs. Directed All Defs. 12.)

18. Reynolds argues that documents responsive to these Requests are relevant to the value of the CMB Defendants' shares at the time of the Merger because the value of the shares would have been a critical concern for the CMB Defendants in

determining whether to assert their appraisal rights. Reynolds also argues that documents responsive to these Requests will bear on the CMB Defendants' credibility as they assert a fair value for the Reynolds common stock at issue.

19. The CMB Defendants respond that Requests 8, 9(a), 13, and 20 are overbroad and irrelevant in that they seek documents that may contain purely subjective reasons for deciding to assert appraisal rights or vote against the Merger. The CMB Defendants contend that such information will have no bearing on the fair value of their Reynolds shares and will thus not be pertinent to the Court's ultimate decision. As they relate to documents solely about the subjective motivations of the CMB Defendants, these objections are well founded.

20. The Court's chief concern in this case is the fair value of Defendants' shares immediately before the Merger. N.C. Gen. Stat. § 55-13-01(5) (defining fair value as "[t]he value of the corporation's shares . . . immediately before the effectuation of the corporate action as to which the shareholder asserts appraisal rights"). While documents responsive to Requests 8, 9(a), 13, and 20 might provide the Court with information helpful in determining this fair value and assessing the credibility of the CMB Defendants' position, such documents might also contain a whole host of unrelated considerations that are irrelevant to either issue. The decision to oppose a merger and to institute appraisal proceedings may be motivated by any number of subjective considerations, including a shareholder's own investment goals, budget, tolerance for risk, and more. Those considerations are irrelevant to the value of the shares held or a shareholder's credibility in asserting a certain fair value. Thus, while

Requests 8, 9(a), 13, and 20 may seek information relevant to this lawsuit, the net cast is too wide.

21. Consequently, the Court concludes that Requests 8, 9(a), 13, and 20 are overly broad and unduly burdensome as currently written. The Court will therefore order that the CMB Defendants respond to Requests 8, 9(a), 13, and 20, but only to the extent the Requests seek documents reflecting a consideration of the value of Reynolds securities. *See* N.C. R. Civ. P. 26(b)(1a) (providing that the court may limit the frequency or extent of discovery if the court determines "the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation"); *Willis*, 291 N.C. at 34, 229 S.E.2d at 200 ("One party's need for information must be balanced against the likelihood of an undue burden imposed upon the other."); *Brown v. Secor*, 2017 NCBC LEXIS 65, at *38–39 (N.C. Super. Ct. July 28, 2017) (denying motion to compel in part as to request for production that was overbroad and sought documents likely to contain irrelevant and personal information).

C.    Requests 14 and 15

22. Requests 14 and 15 call for documents showing other litigation in which the CMB Defendants have been involved. In particular, Request 14 seeks "Documents sufficient to show any other assertions of appraisal rights involving Defendants or any affiliated entities, either by judicial proceeding or independent valuation, including Documents sufficient to identify the Securities at issue." (Pl.'s First Req.

Produc. Docs. Directed All Defs. 10.) Request 15 seeks "Documents sufficient to identify (a) any litigation from any time whatsoever in which Defendants sought to serve or in fact served as a lead plaintiff or in any other representative capacity on behalf of other plaintiffs and (b) the Securities or other investments at issue in each such litigation." (Pl.'s First Req. Produc. Docs. Directed All Defs. 11.) Reynolds argues that these Requests are proper under Rule 26 because information revealed in other lawsuits or proceedings may be relevant to the CMB Defendants' valuations of Reynolds common stock and to issues of expert methodology and witness credibility.

23. The CMB Defendants object to Requests 14 and 15 as having nothing to do with the value of Reynolds or their own valuations of Reynolds common stock. They further argue that even if documents sought by these Requests revealed prior instances in which the CMB Defendants used different valuation strategies, such inconsistencies are inherent in the nature of appraisal proceedings and provide the Court with no meaningful input on expert credibility. The Court agrees.

24. As an initial point, Reynolds's decisions to define "Securities" in its Requests using "the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.*," (Pl.'s First Req. Produc. Docs. Directed All Defs. 5), and to draft Request 15 to cover "any litigation from any time whatsoever in which Defendants sought to serve or in fact served as a lead plaintiff or in any other representative capacity on behalf of other plaintiffs," (Pl.'s First Req. Produc. Docs. Directed All Defs. 11), combine to render Request 15 overbroad. The mere fact that the CMB Defendants have served in a representative

capacity in other lawsuits has nothing to do with the fair value of their Reynolds shares in this appraisal proceeding.

25. Further, Reynolds's arguments in support of Requests 14 and 15 appear to concede that these Requests are not directly relevant to the fair value of the Reynolds common stock that is the subject matter of this case. Instead, Reynolds argues only that Requests 14 and 15 may lead to the discovery of information about inconsistent valuation methodologies used in other appraisal proceedings by the CMB Defendants. The Court cannot agree that Requests 14 and 15 are reasonably calculated to lead to the discovery of admissible evidence on such a conjectural basis.

26. Valuing shares is no easy task. Often referred to as a "battle of the experts" by courts, *see, e.g.*, *Dell, Inc. v. Global Event Driven Master Fund Ltd.*, 177 A.3d 1, 38 (Del. 2017), "an appraisal proceeding is a multifaceted, fact-specific inquiry," *Merion Capital L.P. v. Lender Processing Servs.*, No. 9320-VCL, 2016 Del. Ch. LEXIS 189, at *44 (Del. Ch. Dec. 16, 2016). The factors relevant to a court's determination of fair value "can vary from case to case depending on the nature of the company, the overarching market dynamics, and the areas on which the parties focus." *Id.*; *see In re PetSmart, Inc.*, No. 10782-VCS, 2017 Del. Ch. LEXIS 89, at *55 (Del. Ch. May 26, 2017) ("Every company is different; every merger is different."). That the CMB Defendants may have used different methodologies or strategies in valuing different companies is thus a fact of little consequence here. This lawsuit concerns the fair value of Defendants' Reynolds common stock. Turning every inconsistency between this case and any number of other appraisal actions into a mini-trial about the specific

factors and considerations relevant to the valuation of some other company will not assist the Court in appraising Defendants' shares. As such, the Court concludes that Requests 14 and 15 are not reasonably calculated to lead to the discovery of admissible evidence and that the information sought by these Requests is not relevant under Rule 26.

D. Request 16

27. Request 16 seeks "Documents sufficient to show Defendants' investment policies, procedures, practices, investment guidelines, rules, goals or criteria for investments or investment decisions[.]" (Pl.'s First Req. Produc. Docs. Directed All Defs. 11.) Reynolds includes in this Request documents reflecting the following:

> (a) statements of investment policy; (b) investment objectives or strategies; (c) permissible investments by Defendants or on their behalf; (d) risk analyses or risk evaluations relating to the purchase, holding or sale of any Securities by Defendants or on their behalf; (e) Defendants' risk tolerance with respect to the purchase, holding or sale of any Securities; (f) the use of consultants, advisers, money managers, brokers or other agents with respect to the purchase, holding or sale of any Securities by Defendants or on their behalf; (g) internal and external analysts used for the purpose of acquiring any Securities and evaluating their performance; and (h) trading models, including hedging and arbitrage procedures.

(Pl.'s First Req. Produc. Docs. Directed All Defs. 11.)

28. Reynolds contends that Request 16 seeks relevant information because responsive documents may reveal inconsistencies between the CMB Defendants' policies and the CMB Defendants' proffered valuations. Reynolds suggests that such inconsistencies would reflect on the CMB Defendants' credibility and the cogency of their valuations.

29. The CMB Defendants vehemently oppose Request 16, asserting that the information sought by this Request is highly sensitive. They further contend that even if Request 16 unearthed evidence showing that the CMB Defendants' investment in and valuation of Reynolds common stock violated the CMB Defendants' internal policies, that information does not weigh on the credibility of the CMB Defendants' experts or tell the Court anything about the value of their Reynolds shares.

30. The Court is concerned by the breadth and nature of the documents Request 16 seeks, as well as the lack of any concrete connection between such documents and the value of the CMB Defendants' shares. Indeed, from the arguments advanced by Reynolds in its Summary on this topic and on the October 24 videoconference call, it is clear that Reynolds is not certain what, if any, inconsistent positions the CMB Defendants' policy documents may reveal. The argument appears to be that *if* the CMB Defendants have policies that were pertinent to their Reynolds common stock, and *if* those policies somehow dealt with value or valuation of shares, then the CMB Defendants' ownership of those shares *may* be evidence that the CMB Defendants previously took a position on the value of those shares that is different than their current position. This series of assumptions is too attenuated to allow Reynolds to sift through highly sensitive, proprietary, and confidential documents in the hopes of finding something that will, in all likelihood, be of little to no probative value when compared to the large amount of information the Court must consider in valuing the Reynolds common stock at issue. *See Dworsky*, 49 N.C. App. at 448, 271 S.E.2d at

524 ("While some relevant and material evidence may be contained in the file, plaintiffs are not entitled to a fishing expedition to locate it."). The Court therefore concludes that Request 16 is not reasonably calculated to lead to the discovery of admissible evidence and does not seek relevant information under Rule 26.

IV.

CONCLUSION

31. **WHEREFORE**, the Court, in the exercise of its discretion, hereby **ORDERS** as follows:

   a. The CMB Defendants shall produce to Reynolds documents responsive to Request 7.

   b. The CMB Defendants shall produce to Reynolds documents responsive to Requests 8, 9(a), 13 and 20 but shall only be obligated to produce documents responsive to these Requests that reflect a consideration of the value of Reynolds securities.

   c. The CMB Defendants shall not be required to respond to Requests 14, 15, or 16.

   d. To the extent the CMB Defendants assert that any documents the Court has ordered to be produced under Requests 7, 8, 9(a), 13, or 20 are protected from disclosure by the attorney-client privilege or constitute protected work product, such documents should be handled in the manner described in the Amended Case Management Order entered by the Court on April 10, 2018.

**SO ORDERED**, this the 7th day of November, 2018.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge