Transatlantic Healthcare, LLC v. Alpha Constr. of the Triad, Inc., 2017 NCBC 21.

STATE OF NORTH CAROLINA

COUNTY OF GUILFORD

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 5263

TRANSATLANTIC HEALTHCARE, LLC and PROFESSIONAL CENTER FOR INTERNAL MEDICINE, INC.,

Plaintiffs,

v.

ALPHA CONSTRUCTION OF THE TRIAD, INC.; J&M CONSTRUCTION SERVICES, INC.; JUDITH JUDALENA ALLEY a/k/a JUDITH J. BAUTISTA; and JEFFREY WAYNE ALLEY,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER & OPINION ON PLAINTIFFS' AND DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, PLAINTIFFS' MOTION TO STRIKE AND MOTION TO COMPEL, AND DEFENDANTS' MOTIONS TO QUASH**

1. THIS MATTER is before the Court on (1) Plaintiffs' Motion for Summary Judgment or Partial Summary Judgment ("Plaintiffs' Motion for Summary Judgment"), (2) Defendants' Motion for Summary Judgment, (3) Plaintiffs' Motion to Strike Affidavits of Judith Judalena Alley ("Motion to Strike"), (4) Plaintiffs' Motion to Compel Discovery ("Motion to Compel"), and (5) Defendants' Motions to Quash (collectively, the "Motions"). For the reasons discussed below, Plaintiffs' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART, Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART, Plaintiffs' Motion to Strike is DENIED, Plaintiffs' Motion to Compel is GRANTED IN PART and DENIED IN PART, and Defendants' Motions to Quash are DENIED.

*Gordon Law Offices, by Harry G. Gordon, for Plaintiffs.*

*Rossabi Reardon Klein Spivey PLLC, by Amiel J. Rossabi and Elizabeth M. Klein, for Defendants.*

Gale, Chief Judge.

## I. BACKGROUND AND PROCEDURAL HISTORY

2. This lawsuit arises from the transfer of $165,000 from Plaintiffs to Defendants. The threshold question is whether that transfer was a loan subject to repayment under North Carolina law, or a gift that Defendants have no obligation to repay.

3. The Court does not make findings of fact when it rules on a motion for summary judgment, but it may summarize the underlying facts to provide context for its ruling. *E.g.*, *In re Estate of Pope*, 192 N.C. App. 321, 329, 666 S.E.2d 140, 147 (2008).

### A. Factual Background

4. Plaintiffs Transatlantic Healthcare, LLC ("Transatlantic") and Professional Center for Internal Medicine, Inc. ("PCIM") are companies organized under Florida law. (Compl. ¶¶ 1–2.) Hemant Banker is the 99% owner of both companies. (Banker Aff. ¶ 2; Kutty Aff. ¶ 6.)

5. Defendant J&M Construction Services, Inc. ("J&M") is a former North Carolina corporation formed in 1999 by Defendant Jeffrey Wayne Alley ("Jeffrey Alley") and his late wife, Margie Beasley Alley ("Margie Alley"). (Compl. ¶ 7.) J&M was dissolved in September 2012. (*See* Compl. Ex. E.) Defendants assert that Jeffrey Alley was the 100% owner of J&M at the time of dissolution. (Am. Countercl. ¶ 5.)

Defendant Judith Judalena Alley a/k/a Judith J. Bautista's ("Judith Alley") ownership interest in J&M is a contested fact in this lawsuit. (*Compare* Am. Countercl. ¶ 5, *with* Pls.' Br. Supp. Mot. Compel 4–7.)

6. Following Margie Alley's death in 2004, Jeffrey Alley married Margie Alley's cousin, Judith Alley. (Compl. ¶ 7.) In 2009, Judith Alley formed a new company, Defendant Alpha Construction of the Triad, Inc. ("Alpha"), a corporation organized under North Carolina law. (Compl. ¶ 20.) Judith Alley is the 100% owner of Alpha. (Am. Countercl. ¶ 4.)

7. During the economic recession in 2009, J&M began to experience financial difficulties. Around that time, Theresa "Tess" Judalena ("Tess Judalena"), Judith Alley's mother, approached Dr. Mohan Kutty ("Dr. Kutty") to ask for financial assistance on behalf of J&M. (Am. Answer ¶ 9.)

8. Dr. Kutty is a citizen and resident of Florida, where he owns and operates Trinity Physicians, LLC. (Am. Countercl. ¶ 8; Kutty Aff. ¶¶ 2, 7.) Through his company, Dr. Kutty provides free medical-consulting services to Transatlantic. (Kutty Aff. ¶ 7.) He also "provide[s] financial assistance to deserving students in need of financial assistance to further their education." (Kutty Aff. ¶ 10.) Dr. Kutty worked closely with Pilar "Lari" Cummings ("Pilar Cummings"), Judith Alley's aunt, who owns a Florida corporation that previously provided consulting services to Transatlantic. (Cummings Aff. ¶ 6.)

9. Pilar Cummings introduced Dr. Kutty and Hemant Banker to Tess Judalena—Pilar Cummings's sister—and to Jill Mary Bautista ("Jill Bautista")—

Tess Judalena's daughter and Judith Alley's younger sister. (Banker Aff. ¶ 3(b).) Tess Judalena and Jill Bautista are citizens and residents of the Republic of the Philippines. (Banker Aff. ¶ 3(c).) Tess Judalena became the business contact for one of Hemant Banker's business ventures in the Philippines. (Banker Aff. ¶ 3(d).) On at least one occasion, Dr. Kutty provided financial assistance to Tess Judalena and to Jill Bautista to help with Jill Bautista's medical-school expenses. (Kutty Aff. ¶ 10.)

10.    After his conversation with Tess Judalena, Dr. Kutty allegedly spoke with Judith Alley by phone regarding J&M's financial situation and was informed that, to continue operating, J&M needed approximately $160,000 to $170,000. (Judith Alley Aff. ¶¶ 3–4.) In response, Dr. Kutty asked Hemant Banker, as owner of Transatlantic and PCIM, to approve a $165,000 transfer to Judith Alley for J&M. (Banker Aff. ¶ 3(h).) Hemant Baker approved the transfer. (Banker Aff. ¶ 3(g).)

11.    Dr. Kutty was in charge of setting the terms of the transaction. (Kutty Dep. 24:14–26:11.) While Dr. Kutty claims that he instructed Transatlantic's account manager, Lori Diaz—Tess Judalena's sister and Judith Alley's aunt—to draw up loan papers and have Judith Alley and Jeffrey Alley sign a promissory note or a security agreement, it is uncontested that those documents were never created. (Diaz Aff. ¶¶ 4, 14; Kutty Dep. 25:3–27:17.)

12.    On January 27, 2009, Plaintiffs received a fax from Judith Alley addressed to "Aunt Lari"—Judith Alley's name for Pilar Cummings—titled "Revised Equipment & Vehicle List with estimated amortization schedule." (Compl. ¶¶ 11–13;

Diaz Aff. ¶ 16; *see* Compl. Exs. A, B.)  It contained a sample amortization schedule with the following terms:

- Loan Date: 5/1/2009

- Principal: $100,000.00

- # of Payments: 60

- Interest Rate: 3.50%

- Payment: $1,819.17

(Compl. Ex. A.)  Plaintiffs received a second fax from Judith Alley on February 17, 2009, containing an updated list of J&M's equipment and vehicles.  (Compl. ¶¶ 14–15; Diaz Aff. ¶ 16; *see* Compl. Ex. C.)  Lori Diaz received both of Judith Alley's faxes and provided copies to Pilar Cummings, Dr. Kutty, and Hemant Banker.  (Diaz Aff. ¶ 16.)

13.    Between January and May 2009, Plaintiffs wired a total of $165,000 to J&M in four separate installments.  (Compl. ¶ 18.)  From June 2009 to January 2013, Defendants made twenty-six payments to Plaintiffs, totaling $51,500.  (Compl. ¶ 29.)  Some checks were written to Transatlantic, and others to PCIM.  (Compl. ¶¶ 19, 25; Am. Countercl. ¶ 30.)  J&M made the first four payments, each for $3,000, between June and September 2009.  (Compl. ¶ 27.)

14.    On January 5, 2010, J&M held a special meeting of its board of directors for the purpose of "approv[ing] the transfer of all equipment of [J&M] to TransAtlantic Health Group, Inc. [i]n satisfaction of debt."  (Poe Aff. Ex. E, at 2.)  During that meeting, the board passed a resolution signed by Jeffrey Alley, stating

that J&M was unable to pay its debts because several of its customers had gone out of business. (*See* Poe Aff. Ex. E, at 1.) The meeting minutes state that "[o]ne of [J&M's] largest creditors is Transatlantic Health Group which has a security interest in all equipment of [J&M]. . . . [and] has called its loan due and requested surrender of its security." (Poe Aff. Ex. E, at 1.) J&M's officers were ordered to "surrender all equipment of the corporation that is security for Transatlantic's loan to Transatlantic." (Poe Aff. Ex. E, at 1.)

15. A UCC financing statement filed with the North Carolina Secretary of State on February 19, 2010, lists Transatlantic as a secured party relating to J&M's outstanding debt. (Poe Aff. ¶ 5; *see* Poe Aff. Ex. A.) The financing statement lists equipment, supplies, tools, and receivables as collateral for the debt. (Poe Aff. Ex. A.)

16. Judith Alley has testified that the board minutes from J&M's special meeting erroneously refer to "Transatlantic" instead of Truliant Federal Credit Union ("Truliant"). (Judith Alley Dep. 29:16–30:19, 227:11–16; Second Aff. Judith Alley ¶¶ 4–5.) At the time of the board meeting, J&M owed on a $395,000 loan with Truliant. (Compl. ¶ 60; Am. Answer ¶¶ 60, 95, 102.)

17. Alpha, rather than J&M, made payments to Plaintiffs beginning with the fifth of the twenty-six payments on April 30, 2010. (Compl. ¶ 25.) Between May 2010 and January 2013, Alpha sent multiple checks to Plaintiffs in varying amounts of $3,000, $1,000, $300, and $200. (Compl. ¶¶ 26–27.) Some of the checks had "J&M Construction loan payment," "J&M Construction loan," or "J&M Loan" written on the

memo line. (Compl. ¶¶ 30–35.) Judith Alley sent the last check on behalf of Alpha on January 31, 2013, for $200. (Compl. ¶ 46.)

18. On October 25, 2013, Plaintiffs sent Judith Alley a letter demanding that Defendants pay their unpaid balance. (Compl. ¶ 47; *see* Compl. Ex. F.)

B. <u>Procedural History</u>

19. Plaintiffs commenced this action on May 2, 2014, asserting claims for (1) breach of contract, (2) continuing fraud and misrepresentation, (3) continuing conspiracy to defraud, (4) fraudulent conveyance, (5) de facto merger, (6) continuation of the enterprise, (7) breach of fiduciary duty and constructive fraud, (8) intentional interference with contract, (9) inducing breach of fiduciary duty and aiding and abetting breach of fiduciary duty, (10) unfair or deceptive trade practices under N.C. Gen. Stat. § 75-1.1, and (11) accounting.

20. Defendants filed an Answer, Counterclaims, and Third-Party Complaint on July 7, 2014, asserting counterclaims against Plaintiffs, and third-party claims against Dr. Kutty and Pilar Cummings. On August 13, 2014, Dr. Kutty and Pilar Cummings moved to dismiss the Third-Party Complaint and filed a notice of designation. The case was designated as a mandatory complex business case on August 27, 2014, and assigned to the undersigned on August 28, 2014. The Answer, Counterclaims, and Third-Party Complaint were later withdrawn. *See* Order, *Transatlantic Healthcare, LLC v. Alpha Constr. of the Triad, Inc.*, No. 14 CVS 5263 (N.C. Super. Ct. Jan. 20, 2015).

21. On January 20, 2015, Defendants filed an Amended Answer and Counterclaim, asserting counterclaims for declaratory judgment, abuse of process, fraud, and unfair or deceptive trade practices under N.C. Gen. Stat. § 75-1.1.

22. Defendants' Motion for Summary Judgment asks the Court to grant summary judgment in their favor on all claims asserted in Plaintiffs' Complaint. Plaintiffs' Motion for Summary Judgment asks the Court to grant summary judgment or partial summary judgment in their favor on all claims asserted in the Complaint and on all counterclaims asserted by Defendants.

23. Plaintiffs' Motion to Strike, filed contemporaneously with Plaintiffs' Motion for Summary Judgment, asks the Court to strike Judith Alley's affidavits.

24. Plaintiffs' Motion to Compel, also filed contemporaneously with Plaintiffs' Motion for Summary Judgment, asks the Court to compel Defendants to make discovery, strike Defendants' defenses and counterclaims, and award attorney fees to Plaintiffs.

25. Defendants' Motions to Quash ask the Court to quash subpoenas issued by Plaintiffs to Truliant, Branch Banking & Trust Company ("BB&T"), and Wells Fargo Bank, N.A. ("Wells Fargo").

26. The Motions—with the exception of Defendants' Motions to Quash, which were not briefed—have been fully briefed and argued, and are now ripe for resolution.

## II.    MOTIONS FOR SUMMARY JUDGMENT

### A. Legal Standard

27.    In ruling on a motion for summary judgment under Rule 56(c) of the North Carolina Rules of Civil Procedure, the Court will grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2015). Likewise, North Carolina courts recognize the use of partial summary judgment under Rule 56(d) to simplify cases by disposing of issues that are ripe for summary judgment. *Id.* § 1A-1, Rule 56(d); *see, e.g.*, *Case v. Case*, 73 N.C. App. 76, 78, 325 S.E.2d 661, 663 (1985).

28.    "A 'genuine issue' is one that can be maintained by substantial evidence." *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000). The movant may make the showing required for summary judgment by proving that "an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would be barred by an affirmative defense, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of her claim." *Id.* (citations omitted). The Court must take all facts asserted by the nonmoving party as true, and view all inferences from those facts in the light most favorable to that party. *Id.* In evaluating whether summary judgment is appropriate, the Court's job is not to determine which party is telling the correct version of the facts. *See Kessing v. Nat'l Mortg. Corp.*, 278 N.C. 523, 535, 180 S.E.2d 823, 830 (1971).

## B. Cross-Motions for Summary Judgment on Plaintiffs' Claims

29.     The parties move for summary judgment on each of Plaintiffs' claims. Defendants move for summary judgment on the grounds that no contract for a loan ever existed between any Plaintiff and any Defendant, and thus, every claim brought by Plaintiffs must fail because the claims are based on either the existence of a valid contract between the parties or a debt owed by Defendants to Plaintiffs.  Plaintiffs, in turn, move for summary judgment in their favor, arguing that the pleadings, affidavits, and depositions show definitive proof that a loan was made and that Defendants engaged in fraud.

### (1) Breach of contract

30.     First, the parties move for summary judgment on Plaintiffs' breach-of-contract claim.  This claim goes to the core dispute in this lawsuit: whether a contract for a loan was formed between any Plaintiff and any Defendant in connection with the $165,000 transfer.   Plaintiffs contend that the transfer was based on an agreement between the parties in which Defendants agreed to repay the $165,000 principal plus interest at 3.5%.  (Compl. ¶ 49.)  They claim that Defendants are obligated to pay their remaining outstanding balance of $113,500 plus interest at the legal rate of 8%, which is to be calculated from August 31, 2011, when Defendants made their last $3,000 payment.  (Compl. ¶ 49.)  Defendants contend that Plaintiffs have failed to sufficiently allege and prove that a contract was ever made, and that the $165,000 transfer was intended not as a loan but as a gift to provide assistance to Defendants when they were struggling financially.

31.     Under North Carolina law, a breach-of-contract claim requires "(1) [the] existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000) (citing *Jackson v. Carolina Hardwood Co.*, 120 N.C. App. 870, 871, 463 S.E.2d 571, 572 (1995)). To constitute an enforceable oral agreement, "the parties must express themselves in such terms that the Court can ascertain to a reasonable degree of certainty what they intended by their agreement." *Thomas v. McMahon*, No. 08 CVS 24887, 2015 NCBC LEXIS 67, at *26 (N.C. Super. Ct. June 23, 2015) (quoting *F. Indus., Inc. v. Cox*, 45 N.C. App. 595, 599, 263 S.E.2d 791, 793 (1980)). It must be clear that there has been "a meeting of the minds," meaning "that the parties assent to the same thing in the same sense." *Pike v. Wachovia Bank & Tr. Co.*, 274 N.C. 1, 11, 161 S.E.2d 453, 462 (1968). "When there has been no meeting of the minds on the essentials of an agreement, no contract results." *Creech v. Melnik*, 347 N.C. 520, 527, 495 S.E.2d 907, 912 (1998).

32.     The parties do not dispute that Plaintiffs delivered $165,000 to Defendants through four separate wire transfers. Rather, the parties dispute whether there was an agreement to repay the $165,000.

33.     Plaintiffs argue that they are entitled to summary judgment based on Defendants' twenty-six payments to Plaintiffs, the "J&M Construction loan payment," "J&M Construction loan," and "J&M Loan" notation written on several checks, the board resolution and meeting minutes that refer to Transatlantic as a creditor of J&M, and the UCC financing statement listing Transatlantic as a secured creditor. (Pls.' Br. Summ. J. 5.) They also rely on an e-mail to Hemant Banker sent

from Jeffrey Alley and Judith Alley's joint e-mail address to Pilar Cummings's e-mail address, in which Jeffrey Alley and Judith Alley refer to the $165,000 as a loan and mention monthly payments of $3,000. (Second Aff. Cummings Ex. A.)

34. Notwithstanding those documentary references, Defendants assert Plaintiffs' inability to articulate material terms for the alleged loan. They stress that none of the parties who were supposed to set the terms of the alleged loan ever did so, leaving material terms ambiguous, including the loan amount, interest rate, payment amounts, due dates, repayment terms, required documentation, personal guarantees, and required collateral.

35. The Court concludes that there are material facts in dispute regarding whether the parties reached a meeting of the minds on the material terms of the alleged loan contract that prevent the Court from granting summary judgment for Plaintiffs or Defendants.

36. First, it is undisputed that J&M and Alpha made numerous payments to Plaintiffs following the $165,000 transfer. According to Judith Alley, Defendants made these payments because of Pilar Cummings's suggestion that J&M—and later Alpha—repay money each month "as a demonstration of good faith to Dr. Kutty." (Judith Alley Aff. ¶ 8.) However, while Defendants contend that specific terms for repayment were never established, the transfers to Plaintiffs were for distinct and consistent monetary amounts, initially beginning at $3,000. (Compl. ¶ 27.) The fact that several checks contained "J&M Construction loan payment," "J&M Construction

loan," or "J&M Loan" in the memo line indicates that Defendants may have viewed the transfer as a loan instead of a gift.

37. Moreover, while the proposed amortization schedule faxed by Judith Alley to Plaintiffs provides what appears to be terms for a proposed loan, including the date, principal, number of payments, interest rate, and amount for monthly payments, it does not match the amount that Plaintiffs actually paid Defendants. Even when looking solely at the first three wire transfers, the amount actually transferred exceeds the $100,000 principal provided on the estimated amortization schedule. (*See* Compl. ¶ 27; Compl. Ex. A.) Although Pilar Cummings testified that the last payment was $5,000 more than it should have been, (Second Aff. Cummings ¶ 5,) there are triable issues of fact surrounding the transfer of the specified increments of funds, because those amounts do not match the amounts provided in the document alleged to represent the terms of the loan.

38. Further, while Hemant Banker testified that Dr. Kutty was responsible for determining the terms of the purported loan, Dr. Kutty testified that he did not discuss any payment terms with Defendants because he expected Pilar Cummings to do so. (Kutty Dep. 29:7–17.) Again, the loan amount stated in the proposed amortization schedule differs from what was actually transferred, and Pilar Cummings admits that neither she nor Lori Diaz ever followed up to request the required paperwork from Defendants, including a promissory note or a security agreement. (Second Aff. Cummings ¶ 5; *see also* Diaz Aff. ¶¶ 4, 14.)

39.     Moreover, while both the UCC financing statement and the J&M board-meeting minutes refer to Transatlantic as a creditor, it is undisputed that Truliant also was a creditor of J&M at that time.  J&M subsequently sold equipment to help pay its loan with Truliant.  Thus, a triable issue of fact remains regarding these documents as evidence of whether a contract existed between the parties, and if so, what its specific terms were.

40.     Finally, there are issues of fact pertaining to the e-mail sent by Judith Alley and Jeffrey Alley's joint e-mail account.  While the e-mail appears to come from the couple's joint e-mail address (jeffandjudithalley@yahoo.com), Judith Alley contends that the e-mail was changed and was drafted in large part by Pilar Cummings, who "required" that the e-mail be sent.  (Judith Alley Dep. 202:6–217:13.)

41.     The evidence shows triable issues of material fact, and thus, the motions for summary judgment on this claim must be denied.

## (2) Continuing fraud and misrepresentation and continuing conspiracy to defraud

### a. Fraud

42.     The parties move for summary judgment on Plaintiffs' claims for continuing fraud and misrepresentation and continuing conspiracy to defraud.

43.     To prevail on a fraud claim, a party must prove five "essential elements": "(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974).

44. A fraud claim "may be based on an 'affirmative misrepresentation of a material fact, or a failure to disclose a material fact relating to a transaction which the parties had a duty to disclose.'" *Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 696, 682 S.E.2d 726, 733 (2009) (quoting *Harton v. Harton*, 81 N.C. App. 295, 297, 344 S.E.2d 117, 119 (1986)). A duty to disclose a material fact arises in three situations: (1) "where a fiduciary relationship exists between the parties to the transaction"; (2) "when a party has taken affirmative steps to conceal material facts from the other"; and (3) "where one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence." *Harton*, 81 N.C. App. at 297–98, 344 S.E.2d at 119.

45. Plaintiffs allege that Defendants committed fraud and misrepresentation by inducing them to lend money with no intent to repay the sum transferred. (Compl. ¶ 67.) They contend that Judith Alley did this by sending the estimated amortization schedule in which she represented the repayment terms for a loan. (Compl. ¶ 67.) Plaintiffs further allege that Defendants falsely represented both the purposes for which the money would be used and the idea that the money would be repaid. (Compl. ¶¶ 66–77.) They claim that Defendants represented that the funds would be used to pay J&M's outstanding equipment loans, as well as unpaid bills for concrete purchased by J&M. (Compl. ¶ 66.) Plaintiffs contend that, instead of using the money for that purpose, Defendants put the money into Alpha's accounts to avoid paying J&M's creditors, including Plaintiffs. (Compl. ¶ 69.)

46. Defendants contend that, because there was no contract, they are entitled to summary judgment on this claim. They argue that, because no contract existed, there could be no fraud or misrepresentation as to the transfer of money or the purposes for which it would be used.

47. Whether a material fact was concealed requires a determination of the relationship between the parties. If it is determined that Transatlantic and PCIM were creditors of J&M, if a contract existed between Plaintiffs and J&M, or if there are sufficient facts to support finding a fiduciary relationship between those parties, there may be a basis for Plaintiffs' fraud claim. However, if no such relationship existed, there could be no concealment or misrepresentation of a material fact. Thus, the motions for summary judgment on Plaintiffs' fraud claim are not ripe, because the claim depends on the resolution of other disputed claims.

### b. Continuing conspiracy to defraud

48. The parties also move for summary judgment on Plaintiffs' claim for continuing conspiracy to defraud. This claim is grounded on Plaintiffs' assertion that Defendants conspired to avoid repaying Plaintiffs the amount of money transferred in the "loan" transaction. (Compl. ¶¶ 78–81.)

49. A claim for conspiracy to defraud cannot succeed without a successful underlying fraud claim. *Jay Grp., Ltd. v. Glasgow*, 139 N.C. App. 595, 599, 534 S.E.2d 233, 236 (2000) (citing *Burton v. Dixon*, 259 N.C. 473, 476, 131 S.E.2d 27, 30 (1963)). Accordingly, this claim also is not ripe for determination.

### (3) Fraudulent conveyance, de facto merger, and continuation of the enterprise

50.    The parties move for summary judgment on Plaintiffs' claims for fraudulent conveyance, de facto merger, and continuation of the enterprise. Essentially, these claims seek to impose liability on Alpha for J&M's obligations. Neither Plaintiffs nor Defendants offer any case law supporting or opposing the motions for summary judgment on these claims. Nevertheless, because the claims depend first on Plaintiffs' status as creditors of J&M, the Court determines that the motions for summary judgment on these claims are not yet ripe for determination.

#### a.  Fraudulent conveyance

51.    Plaintiffs assert a claim for fraudulent conveyance in violation of N.C. Gen. Stat. § 39-15. (Compl. ¶¶ 88–89.) That statute was repealed twenty years ago. *See* Act of July 10, 1997, ch. 291, sec. 1, 1997 N.C. Sess. Laws 689, 689. Conveyances that occurred after October 1, 1997, are governed by the Uniform Voidable Transactions Act ("UVTA"), N.C. Gen. Stat. §§ 39-23.1 to .12 (2015).

52.    Plaintiffs contend that J&M fraudulently conveyed all its assets to Alpha to prevent creditors, including Plaintiffs, from recovering outstanding debts from J&M. (Compl. ¶¶ 84–86.) Defendants contend that Plaintiffs are not creditors of J&M and thus do not have standing to bring a claim for fraudulent conveyance. (Mem. Law Supp. Defs.' Mot. Summ. J. 15.)

53.    A plaintiff must have standing as a creditor to proceed with a claim under the UVTA. *Poulos v. Poulos*, No. 15 CVS 1116, 2016 NCBC LEXIS 73, at *31 (N.C. Super. Ct. Sept. 26, 2016). "[A] creditor who establishes the existence of a

fraudulent transfer may obtain '[a]voidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim.'" *Miller v. First Bank*, 206 N.C. App. 166, 170, 696 S.E.2d 824, 827 (2010) (alteration in original) (quoting N.C. Gen. Stat. § 39-23.7(a)(1)).

54.   Because there are issues of fact remaining as to whether a loan contract was formed between Plaintiffs and J&M, the motions for summary judgment on this claim are not ripe for determination.

### b.  De facto merger and continuation of the enterprise

55.   Plaintiffs' claims for de facto merger and continuation of the enterprise likewise depend on Plaintiffs' status as creditors of J&M.

56.   Plaintiffs allege that a de facto merger occurred when J&M merged with Alpha and Alpha took on J&M's liabilities.  (Compl. ¶ 93.)  They contend that Defendants used Alpha to avoid liability for J&M's debts, and that there was continuity of management, personnel, physical location, type of business operations, and ownership, among other things.  They further allege that Alpha is liable for J&M's debts under a continuation-of-the-enterprise theory because Alpha resurfaced as a business identical to J&M.  (Compl. ¶ 99.)

57.   As a general rule, a corporation that "purchases all or substantially all of the assets of another corporation" is not liable for the old corporation's debts. *Budd Tire Corp. v. Pierce Tire Co.*, 90 N.C. App. 684, 689, 370 S.E.2d 267, 270 (1988).  This general rule does not apply where

> (1) there is an express or implied agreement by the purchasing corporation to assume the debt or liability; (2) the transfer amounts to a

de facto merger of the two corporations; (3) the transfer of assets was done for the purpose of defrauding the corporation's creditors, or; (4) the purchasing corporation is a "mere continuation" of the selling corporation in that the purchasing corporation has some of the same shareholders, directors, and officers.

*Id.* at 687, 370 S.E.2d at 269. To determine whether a corporation is a "mere continuation" of an enterprise, courts look to the "continuity of stockholders and directors between the selling and purchasing corporation," along with factors such as "inadequate consideration for the purchase" and "lack of some of the elements of a good faith purchaser for value." *G.P. Publ'ns, Inc. v. Quebecor Printing—St. Paul, Inc.*, 125 N.C. App. 424, 434–35, 481 S.E.2d 674, 680 (1997).

58. Because successor liability is treated as a matter of equity under North Carolina law and exists to protect a predecessor corporation's creditors, *see Budd Tire Corp.*, 90 N.C. App. at 689, 370 S.E.2d at 270, it necessarily follows that Plaintiffs must be creditors of J&M to bring a claim for de facto merger or continuation of the enterprise as an avenue for successor liability. As detailed above, there are questions of fact as to whether Plaintiffs were creditors of J&M. Thus, Plaintiffs' and Defendants' motions for summary judgment on Plaintiffs' claims for de facto merger and continuation of the enterprise are not yet ripe for determination.

(4) Breach of fiduciary duty and constructive fraud

59. Plaintiffs assert a single claim for breach of fiduciary duty and constructive fraud against Judith Alley and Jeffrey Alley. As the basis for this claim, Plaintiffs assert that, when J&M became insolvent, Judith Alley and Jeffrey Alley, as owners, directors, and controlling shareholders of J&M, owed and then breached

a fiduciary duty to Plaintiffs as creditors by taking advantage of their insider positions for their own benefit and transferring assets from J&M to Alpha to avoid paying outstanding debts. (Compl. ¶¶ 107–08.) Defendants contend that, because Plaintiffs were not creditors, and because the transfer of $165,000 was not a loan, summary judgment should be entered in their favor.

60. As a general rule, "directors of a corporation do not owe a fiduciary duty to creditors of the corporation." *Keener Lumber Co. v. Perry*, 149 N.C. App. 19, 29–30, 560 S.E.2d 817, 824 (2002) (quoting *Whitley v. Carolina Clinic, Inc.*, 118 N.C. App. 523, 526, 455 S.E.2d 896, 899 (1995)). However, directors of a corporation may owe a fiduciary duty to creditors of the corporation where there are "circumstances amounting to a 'winding-up' or dissolution of the corporation." *Id.* at 31, 560 S.E.2d at 825 (quoting *Whitley*, 118 N.C. App. at 528, 455 S.E.2d at 900).

61. As explained above, because Plaintiffs' status as creditors depends on the existence of a contract, the motions for summary judgment on Plaintiffs' claim for breach of fiduciary duty and constructive fraud are not ripe.

(5) Aiding and abetting breach of fiduciary duty

62. In addition to their claim for breach of fiduciary duty and constructive fraud against Judith Alley and Jeffrey Alley, Plaintiffs assert a claim for inducing breach of fiduciary duty and aiding and abetting breach of fiduciary duty against Judith Alley, Jeffrey Alley, and Alpha.

63. Plaintiffs allege that Judith Alley, Jeffrey Alley, and Alpha, which Plaintiffs collectively refer to as the "Interfering Defendants," "intentionally and

without justification interfered with and induced breach of fiduciary duty by defendants Judith Alley and Jeffrey Alley and aided and abetted the breach of fiduciary duty." (Compl. ¶ 121.) Defendants ask for summary judgment on the ground that there was no contract. Neither Plaintiffs nor Defendants offer any case law to support or oppose the motions for summary judgment on this claim.

64. This Court has stated on numerous occasions that "[w]hether North Carolina recognizes a claim for aiding and abetting a breach of fiduciary duty remains an open question." *Krawiec v. Manly*, No. 15 CVS 1927, 2016 NCBC LEXIS 7, at *39 (N.C. Super. Ct. Jan. 22, 2016) (Bledsoe, J.) (alteration in original) (quoting *Veer Right Mgmt. Grp., Inc. v. Czarnowski Display Serv., Inc.*, No. 14 CVS 1038, 2015 NCBC LEXIS 13, at *6 (N.C. Super. Ct. Feb. 4, 2015) (Gale, J.)). As the Court recently explained, "even if such a claim should be recognized in North Carolina, the Court of Appeals has held that the claim requires facts supporting an allegation of 'substantial assistance by the aider and abettor in the achievement of the primary violation.'" *Islet Scis., Inc. v. Brighthaven Ventures, LLC*, No. 15 CVS 16388, 2017 NCBC LEXIS 4, at *14 (N.C. Super. Ct. Jan. 12, 2017) (McGuire, J.) (quoting *Bottom v. Bailey*, 238 N.C. App. 202, 212, 767 S.E.2d 883, 889 (2014)). The Court is not aware of a separate claim for "inducing" breach of fiduciary duty.

65. Plaintiffs' pleadings and briefs are completely devoid of support for their aiding-and-abetting claim. If it is determined that Judith Alley and Jeffrey Alley owe fiduciary duties to Plaintiffs, they cannot also be inducers, aiders, or abettors of a breach of those duties. If they are determined to not owe fiduciary duties to Plaintiffs,

there is no primary breach of fiduciary duty for which they could be liable for aiding and abetting. *See Veer Right Mgmt.*, 2015 NCBC LEXIS 13, at \*8 (explaining that "*if* North Carolina recognizes a claim for aiding and abetting breach of fiduciary duty, the elements would include: (1) violation of a fiduciary duty by the primary party"). Rather than reciting the elements for an aiding-and-abetting claim, Plaintiffs recite the elements for a claim of intentional interference with contract. (*See* Compl. ¶¶ 121–22.)

66.     For these reasons, Plaintiffs' Motion for Summary Judgment on this claim is denied, and Defendants' Motion for Summary Judgment on this claim is granted.

### (6) Intentional interference with contract

67.     Plaintiffs assert a claim for intentional interference with contract against Judith Alley, Jeffrey Alley, and Alpha on the grounds that those Defendants interfered with a valid contract between Plaintiffs and J&M. (Compl. ¶¶ 115–18.) Defendants argue that, because no contract exists, there can be no claim of intentional interference with contract.

68.     Under North Carolina law, a claim of tortious interference with contract requires five elements: (1) "a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person," (2) "the defendant knows of the contract," (3) "the defendant intentionally induces the third person not to perform the contract," (4) "and in doing so acts without justification," (5) "resulting in actual damage to plaintiff." *United Labs., Inc. v. Kuykendall*, 322

N.C. 643, 661, 370 S.E.2d 375, 387 (1988); *see also Islet Scis., Inc. v. Brighthaven Ventures, LLC*, No. 15 CVS 16388, 2017 NCBC LEXIS 17, at *19–20 (N.C. Super. Ct. Mar. 6, 2017).

69. Because the first element of an intentional-interference claim depends on resolving the disputed issue regarding the existence of a valid contract, the motions for summary judgment on this claim are not ripe for resolution.

(7) Section 75-1.1

70. The parties move for summary judgment on Plaintiffs' claim for unfair or deceptive trade practices under N.C. Gen. Stat. § 75-1.1. Plaintiffs base their section 75-1.1 claim on the first nine claims asserted in their Complaint.

71. To state a claim under section 75-1.1, Plaintiffs must prove that Defendants (1) "committed an unfair or deceptive act or practice," (2) that the unfair or deceptive act or practice was "in or affecting commerce," and (3) that Defendants' "act proximately caused injury" to Plaintiffs. *Bumpers v. Cmty. Bank of N. Va.*, 367 N.C. 81, 88, 747 S.E.2d 220, 226 (2013) (quoting *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001)); *see* N.C. Gen. Stat. § 75-1.1(a) (2015).

72. The Court has held that it cannot resolve Plaintiffs' fraud claim by summary judgment. A fraud claim may also support a claim under section 75-1.1. *See, e.g., Jones v. Harrelson & Smith Contractors, LLC*, 194 N.C. App. 203, 217, 670 S.E.2d 242, 252 (2008) (holding that, because the plaintiff proved the elements of a fraud claim, they also established that unfair or deceptive acts occurred), *aff'd*, 363 N.C. 371, 677 S.E.2d 453 (2009) (mem.); *see also Bob Timberlake Collection, Inc. v.*

*Edwards*, 176 N.C. App. 33, 42, 626 S.E.2d 315, 323 (2006) (noting that a section 75-1.1 claim may be grounded on a breach of contract if there are "substantial aggravating circumstances attending the breach of contract"); *KRG New Hill Place, LLC v. Spring Inv'rs, LLC*, No. 13 CVS 14770, 2015 NCBC LEXIS 72, at *20 (N.C. Super. Ct. July 8, 2015) (holding that a fraudulent-transfer claim may support a section 75-1.1 claim). Accordingly, Plaintiffs' section 75-1.1 claim is not ripe for summary judgment.

### (8) Accounting

73.    The parties move for summary judgment on Plaintiffs' accounting claim. Plaintiffs allege that they are entitled to see how the $165,000 "loan" was spent because, as creditors, they were not repaid the value of the loan. Defendants contend that summary judgment must be granted in their favor on this issue because Plaintiffs are not creditors of J&M and thus lack standing to bring a claim for accounting.

74.    A party who requests an accounting must be connected to, or have an interest in, the claims asserted. *See Davis v. Davis*, 246 N.C. 307, 310, 98 S.E.2d 318, 321 (1957). Because Plaintiffs' right to an accounting depends on their status as creditors, the motions for summary judgment on this claim are not ripe for determination.

## C. Plaintiffs' Motion for Summary Judgment on Defendants' Counterclaims

75.    Plaintiffs move for summary judgment on Defendants' four counterclaims.[1]  As discussed below, Plaintiffs' Motion for Summary Judgment is granted in part and denied in part.

### (1) Declaratory judgment

76.    Plaintiffs move for summary judgment on Defendants' counterclaim for declaratory judgment.  Defendants ask the Court for a declaratory judgment under N.C. Gen. Stat. § 1-253 that there is no contract to repay the $165,000.  Plaintiffs' Motion for Summary Judgment asks the Court to issue a declaratory judgment that there is a contract between the parties.

77.    As noted above, there are genuine issues of material fact regarding whether the $165,000 transfer was intended as a loan that preclude summary judgment on Defendants' declaratory-judgment counterclaim. *See Purcell v. Downey*, 162 N.C. App. 529, 531, 591 S.E.2d 556, 558 (2004) (holding that summary judgment is appropriate in a declaratory action only where "there is no substantial controversy as to the facts disclosed by the evidence").  Accordingly, Defendants' counterclaim for declaratory judgment is not ripe for summary adjudication.

---

[1] In Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment, Plaintiffs appear to renew an earlier-filed motion to strike.  (*See* Pls.' Br. Opp'n to Defs.' Mot. Summ. J. 4 (arguing that the Court should strike multiple paragraphs in Defendants' Amended Answer and Counterclaim, as well as three of Defendants' four counterclaims).)  The Rule 12(f) motion to strike to which Plaintiffs refer was directed at Plaintiffs' original Answer, Counterclaims, and Third-Party Complaint, and was deemed moot by Court order on January 20, 2015. *See* Order, *Transatlantic Healthcare, LLC*, No. 14 CVS 5263 (N.C. Super. Ct. Jan. 20, 2015).  Plaintiffs' motion to strike cannot be revived through their response brief and will not be considered by the Court.

## (2) Abuse of process

78.     Plaintiffs also move for summary judgment on Defendants' counterclaim for abuse of process.  As the basis of this counterclaim, Defendants assert that "Plaintiffs have utilized this action in order to accomplish their ulterior purpose of obtaining funds to which they were not entitled against J&M, Alpha, as well as Mr. and Mrs. Alley individually."  (Am. Countercl. ¶ 64.)

79.     Abuse of process is defined as "the misapplication of civil or criminal process to accomplish some purpose not warranted or commanded by the process." *Moch v. A.M. Pappas & Assocs., LLC*, __ N.C. App. __, 794 S.E.2d 898, 905 (2016) (quoting *Pinewood Homes, Inc. v. Harris*, 184 N.C. App. 597, 602, 646 S.E.2d 826, 831 (2007)).  To succeed on a claim for abuse of process, two elements must be proven: (1) "that the defendant had an ulterior motive to achieve a collateral purpose not within the normal scope of the process used," and (2) "that the defendant committed some act that is a 'malicious misuse or misapplication of that process *after issuance* to accomplish some purpose not warranted or commanded by the writ.'"  *Id.* (quoting *Pinewood Homes, Inc.*, 184 N.C. App. at 602, 646 S.E.2d at 831).  An ulterior motive for bringing the case, by itself, is insufficient to state a claim for abuse of process. *E.g.*, *Edwards v. Jenkins*, 247 N.C. 565, 568, 101 S.E.2d 410, 412 (1958) ("Regular and legitimate use of process, though with a bad intention, is not a malicious abuse of process." (quoting *Melton v. Rickman*, 225 N.C. 700, 704, 36 S.E.2d 276, 278 (1945))); *accord Chesson v. Rives*, No. 12 CVS 3382, 2016 NCBC LEXIS 92, at *46–47 (N.C. Super. Ct. Nov. 30, 2016); *DDM&S Holdings, LLC v. Doc Watson Enters.,*

*LLC*, No. 14 CVS 3107, 2016 NCBC LEXIS 88, at *8–9 (N.C. Super. Ct. Nov. 10, 2016).

80. The Court concludes that the evidence, viewed in the light most favorable to Defendants, does not permit a factfinder to reasonably conclude that Plaintiffs misused the legal process for an ulterior purpose. It is clear that, regardless of whether a contract is found to exist or whether Plaintiffs are ultimately entitled to recover, Plaintiffs' motive in bringing this lawsuit is to recover the $165,000 that they transferred to Defendants. Accordingly, the Court grants Plaintiffs' Motion for Summary Judgment on this claim.

### (3) Fraud

81. Plaintiffs move for summary judgment on Defendants' counterclaim for fraud. As a basis for this counterclaim, Defendants allege that "Plaintiffs, by and through their agents, Dr. Kutty and [Pilar] Cummings, deceived Defendants by means of false representations of material facts, concealment of material facts, or both." (Am. Countercl. ¶ 67.) Plaintiffs contend that summary judgment is proper because Defendants have failed to plead their fraud claim with the level of specificity required for a fraud claim under North Carolina law.

82. As the Court explains above, to prevail on a fraud claim, a party must prove five elements: "(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Ragsdale*, 286 N.C. at 138, 209 S.E.2d at 500.

83.    Defendants assert that the fraud and misrepresentations were premised on the fact that the $165,000 transfer was used to provide Plaintiffs the ability to recuperate financial benefits that they were not entitled to receive. (Am. Countercl. ¶ 73(g).)

84.    While Plaintiffs' motion must be construed in the light most favorable to Defendants, Defendants' allegations of fraud and misrepresentation are premised on the nature of the $165,000 transfer and whether it did in fact constitute a loan. Because questions of fact remain as to whether there was a contract between the parties and whether the transfer was intended to be a loan, Plaintiffs' Motion for Summary Judgment on Defendants' counterclaim for fraud is not yet ripe for determination.

### (4) Section 75-1.1

85.    Plaintiffs move for summary judgment on Defendants' section 75-1.1 counterclaim.

86.    In paragraph 71 of this Order & Opinion, the Court states the elements required for a party to prevail on a section 75-1.1 claim. Defendants contend that Plaintiffs actions constitute an unfair or deceptive trade practice because Plaintiffs were part of a scheme to recover money that they were not entitled to receive. (Am. Countercl. ¶ 80.) Plaintiffs contend that the alleged acts do not fall within the scope of section 75-1.1 because there was no unfair or deceptive conduct, and because the acts complained of do not affect commerce.

87.    Here, the "scheme" that Defendants refer to is premised on the $165,000 transfer.  If the transfer is found to be a loan, Defendants' allegations that the transaction was intended to allow Plaintiffs to recover money to which they were not entitled cannot serve as a valid basis for Defendants' section 75-1.1 claim.  Whether the transfer constituted a contract involves factual disputes that cannot be resolved on a motion for summary judgment.  Clearly, Plaintiffs contend that there was a contract.  However, the Court is dubious whether Plaintiffs' conduct rises to the level of unfair or deceptive conduct required under section 75-1.1, even if Plaintiffs prevail on their contract claim.  But in light of the other claims that must proceed, at this time, Plaintiffs' Motion for Summary Judgment on Defendants' section 75-1.1 claim is denied.

### III.    PLAINTIFFS' MOTION TO STRIKE

88.    Plaintiffs' Motion to Strike asks the Court to strike the affidavits of Judith Alley on the ground that the affidavits are inadmissible under the parol evidence rule.

89.    Rule 56(e) governs the form of summary-judgment affidavits and requires that affidavits supporting or opposing summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  N.C. Gen. Stat. § 1A-1, Rule 56(e).  Statements of hearsay or facts that would be inadmissible under the parol evidence rule should be stricken by the trial

court. *See Borden, Inc. v. Brower*, 284 N.C. 54, 59, 199 S.E.2d 414, 418 (1973); *Moore v. Coachmen Indus., Inc.*, 129 N.C. App. 389, 394, 499 S.E.2d 772, 776 (1998).

90. The parol evidence rule "excludes prior or contemporaneous oral agreements which are inconsistent with a written contract if the written contract contains the complete agreement of the parties." *Emp't Staffing Grp., Inc. v. Little*, __ N.C. App. __, 777 S.E.2d 309, 313 (2015) (quoting *Phelps-Dickson Builders, LLC v. Amerimann Partners*, 172 N.C. App. 427, 436, 617 S.E.2d 664, 670 (2005)). The rule "applies where the writing totally integrates all the terms of a contract or supersedes all other agreements relating to the transaction." *Id.* (quoting *Craig v. Kessing*, 297 N.C. 32, 35, 253 S.E.2d 264, 265 (1979)).

91. As an initial matter, while the Motion to Strike purports to target multiple affidavits—presumptively Judith Alley's first affidavit, filed August 19, 2014, and her second affidavit, filed October 28, 2014—Plaintiffs' argument appears to address only the second affidavit. Nevertheless, Plaintiffs' argument is misplaced as to either affidavit.

92. Plaintiffs argue that the parol evidence rule should preclude Judith Alley from contradicting "a fax she sent, an Amortization Schedule she faxed, checks she signed, 'memos' on checks saying 'payment on J&M loan,' a Corporate Resolution, or a letter-email to Mr. Banker she admitted was 'drafted' by her." (Pls.' Br. Opp'n to Defs.' Mot. Summ. J. 9.) But a key piece is missing to place this dispute in the realm of the parol-evidence rule: a writing that "totally integrates all the terms of a

contract." *Emp't Staffing Grp.*, 777 S.E.2d at 313 (quoting *Craig*, 297 N.C. at 35, 253 S.E.2d at 265).

93. Indeed, Plaintiffs admit that no "writing intended to be the final expression of the parties' agreement" exists. *Phelps v. Spivey*, 126 N.C. App. 693, 697, 486 S.E.2d 226, 229 (1997) (quoting *Weiss v. Woody*, 80 N.C. App. 86, 91, 341 S.E.2d 103, 106 (1986)); (*see, e.g.*, Diaz Aff. ¶¶ 4, 14.) Rather, Judith Alley's second affidavit merely points to a potential typographical error in the J&M board-meeting minutes that puts into question whether a meeting of the minds existed between the parties—a question that raises an issue of material fact as to whether the parties entered into a contract and precludes summary judgment on that issue.

94. The Court finds that Plaintiffs' Motion to Strike is without merit and is therefore denied.

## IV. PLAINTIFFS' MOTION TO COMPEL

95. Plaintiffs' Motion to Compel asks the Court to compel Defendants to make discovery, strike Defendants' affirmative defenses and counterclaims, and award attorney fees to Plaintiffs for Defendants' failure to make discovery. (Pls.' Mot. Compel 1, 5.)

96. As the basis for their motion, Plaintiffs contend that Defendants have "outright refused to produce any tax returns and a number of requested documents that would show the flow of substantial mon[eys] and assets among" Defendants. (Pls.' Mot. Compel ¶ 2.) They claim to have faced Defendants' Motion for Summary Judgment without having the full benefit of discovery to prove that (1) "Judith Alley

admitted the loan on multiple occasions prior to claiming it was a 'gift,'" and (2) "[D]efendants have engaged in multiple fraudulent conveyances, sham transactions, and unfair and deceptive acts and other conduct making them liable for compensatory and punitive damages." (Pls.' Br. Supp. Mot. Compel 2.)

97. In response, Defendants claim that much of the information that Plaintiffs seek through their Motion to Compel has already been produced or is no longer in Defendants' possession, custody, or control. (Defs.' Mem. Law Opp'n Pls.' Mot. Compel 12.) They argue that they cannot be compelled to produce documents that either do not exist or are not in their possession or under their control.

98. Under North Carolina's liberal discovery rules, parties are permitted to obtain discovery on any relevant, nonprivileged matter that "appears reasonably calculated to lead to the discovery of admissible evidence." N.C. Gen. Stat. § 1A-1, Rule 26(b)(1). A party's response to a written discovery request must either state that the request is permitted or raise an objection that articulates the basis for the objection. *Id.* § 1A-1, Rule 34(b).

99. Rule 37 of the North Carolina Rules of Civil Procedure allows a party to file a motion to compel where a party's responses to discovery requests are "evasive or incomplete." *Id.* § 1A-1, Rule 37(a)(3). "The party resisting discovery bears the burden of showing why the motion to compel should not be granted." *Nat'l Fin. Partners Corp. v. Ray*, No. 13 CVS 3319, 2014 NCBC LEXIS 50, at *26 (N.C. Super. Ct. Oct. 13, 2014) (quoting *Smithfield Bus. Park, LLC v. SLR Int'l Corp.*, No. 5:12-CV-282-F, 2014 U.S. Dist. LEXIS 110535, at *7 (E.D.N.C. Aug. 11, 2014)). The

decision whether to grant or deny a motion to compel discovery is within the sound discretion of the trial court. *See, e.g., Phelps-Dickson Builders, LLC*, 172 N.C. App. at 433, 617 S.E.2d at 668.

100. Plaintiffs' supporting brief and the letters to opposing counsel accompanying their Motion to Compel list several documents that Plaintiffs have requested Defendants to produce. (*See* Pls.' Mot. Compel Attachs. 1–5; Pls.' Br. Supp. Mot. Compel 7–11.) It is unclear which of these requests have been resolved since Plaintiffs filed their motion.

101. Clearly, the Court cannot compel Defendants to produce documents that they claim in good faith are no longer in their possession, custody, or control. (*E.g.*, Defs.' Mem. Law Opp'n Pls.' Mot. Compel 12.) However, Defendants fail to meet their burden of proof as to the other requests when they merely state that "[t]he remaining requests seek documents that are irrelevant to whether or not a contract exists" or "simply attempt to embarrass or harass Defendants." (Defs.' Mem. Law Opp'n Pls.' Mot. Compel 13.) For example, whether the payments to Transatlantic and PCIM were deducted on Defendants' tax returns as a deductible business expense is directly relevant to the issue whether the $165,000 was treated as a loan or a gift. Defendants' tax returns, along with the other requested, available documents listed in Plaintiffs' supporting brief and in the letters accompanying their Motion to Compel, should be produced within twenty days of this Order & Opinion.

102. The Court, in its discretion, denies Plaintiffs' request to strike Defendants' affirmative defenses and counterclaims. The Court, in its discretion,

likewise denies Plaintiffs' request for attorney fees under Rule 37(a)(4), because it finds that Defendants' opposition to the Motion to Compel was substantially justified and that, at this stage in the proceedings, an award of expenses, including attorney fees, would be unjust and not appropriate.

## V.   DEFENDANTS' MOTIONS TO QUASH

103.   In their three Motions to Quash, Defendants ask the Court to quash subpoenas issued by Plaintiffs to Truliant, BB&T, and Wells Fargo on the grounds that the information sought by Plaintiffs is not pertinent to the claims asserted in the Complaint, that the issuance of subpoenas is not the proper procedure to gather such information, and that Plaintiffs do not seek the production of the items listed in the subpoenas for a proper or valid purpose.

104.   The subpoena issued to Truliant commands Truliant to produce and permit inspection and copying of "all documents in any reasonable way revealing or pertaining to any loan or loans made to [J&M] (or owners/officers Jeffrey Wayne Alley or Judith Alley) that were in place in 2009 or 2010 . . . and any and all correspondence or other documents relating to the loan or loans."  (Mot. Quash Truliant Subpoena Ex. A.)

105.   The subpoena issued to BB&T commands BB&T to produce and permit inspection and copying of "all documents in any way reflecting a) deposit of funds into the account of [Alpha] from the time the account was created in 2009 until the end of 2014, or b) withdrawal of funds by check or otherwise from the time the account was created in 2009 until the end of 2014."  (Mot. Quash BB&T Subpoena Ex. A.)

106. The subpoena issued to Wells Fargo commands Wells Fargo to produce and permit inspection and copying of "all documents in any way reflecting deposit of funds into the account of [J&M] from November 1, 2008, until the end of 2014 or withdrawal of funds by check or otherwise from November 1, 2008 until the end of 2014." (Mot. Quash Wells Fargo Subpoena Ex. A.)

107. No briefs were submitted to the Court by either Plaintiffs or Defendants in connection with Defendants' Motions to Quash. In their Motion to Compel, Plaintiffs say that they attempted to subpoena the banks only after Defendants declined to supplement their discovery responses. (Pls.' Mot. Compel ¶¶ 13–14.) According to Plaintiff's Motion to Compel, Truliant has produced the subpoenaed documents, but BB&T and Wells Fargo have not. (Pls.' Mot. Compel ¶ 14.)

108. Whether to grant or deny a motion to quash is within the sound discretion of the trial court. *See, e.g.*, *Vaughan v. Broadfoot*, 267 N.C. 691, 697, 149 S.E.2d 37, 42 (1966). In exercising its discretion in ruling on a motion to quash a subpoena, the Court should consider the relevancy and materiality of the subpoenaed items, the right of the subpoenaed party to withhold production on other grounds, and the policy against fishing expeditions. *See State v. Stimson*, __ N.C. App. __, 783 S.E.2d 749, 750–51 (2016).

109. This Court has previously held that "nothing in the North Carolina Rules of Civil Procedure, the Federal Privacy Act, or the North Carolina Financial Privacy Act expressly grants" a third party standing to quash a subpoena to that party's bank. *Deyton v. Estate of Waters*, No. 10 CVS 2582, 2011 NCBC LEXIS 36,

at *14 (N.C. Super. Ct. Sept. 23, 2011). The parties do not address Defendants' standing to challenge the bank subpoenas.

110. The Court, in its discretion, denies Defendants' Motions to Quash.

## VI. CONCLUSION

111. For the foregoing reasons, the Court concludes the following:

(1) Plaintiffs' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART as follows:

    i. Summary judgment is GRANTED in favor of Plaintiffs on Defendants' abuse-of-process counterclaim, and that claim is DISMISSED WITH PREJUDICE.

    ii. Plaintiffs' Motion for Summary as to all other claims and counterclaims is DENIED.

(2) Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART as follows:

    i. Summary judgment is GRANTED in favor of Defendants on Plaintiffs' claim for inducing breach of fiduciary duty or aiding and abetting breach of fiduciary duty, and that claim is DISMISSED WITH PREJUDICE.

    ii. Defendants' Motion for Summary Judgment as to all other claims is DENIED.

(3) Plaintiffs' Motion to Strike is DENIED.

(4)      Plaintiffs' Motion to Compel is GRANTED IN PART and DENIED IN PART.

(5)      Defendants' Motions to Quash are DENIED.

112.   Other than provided in this Order & Opinion, discovery is now closed.

113.   By April 1, 2017, counsel shall confer and propose two dates after July 1, 2017, when all parties can be available for a jury trial. The Court will set a trial date and a schedule for the completion of pretrial procedures in accordance with Business Court Rule 12.3.

SO ORDERED, this the 9th day of March, 2017.

/s/ James L. Gale
_____
James L. Gale
Chief Business Court Judge